**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmy Lee JEFFERIES, Betty J.
Jefferies, Defendants–Appellants.**

No. 89–8005.

United States Court of Appeals,
Eleventh Circuit.

Aug. 15, 1990.

Rehearing Denied Oct. 4, 1990.

Victoria D. Little, Decatur, Ga., for Jimmy Lee Jefferies.

Christopher W. Duncan, Toccoa, Ga., for Betty J. Jefferies.

Miriam Wansley Duke, Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before CLARK, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

CLARK, Circuit Judge.

Appellants, Jimmy Lee Jefferies and Betty Jane Jefferies were indicted in the United States District Court for the Middle District of Georgia on December 10, 1987 in a multi-count multi-defendant indictment alleging multiple violations of the federal drug and tax laws. Included in the indictment were the Jefferies' two children, Sharon and Kenny. Both appellants pled guilty to count 20 of the indictment, alleging tax evasion in violation of 26 U.S.C. § 7206(1). In addition, Jimmy Jefferies pled guilty to count 2 of the indictment, which alleged possession of cocaine with the intention to distribute in violation of 21 U.S.C. § 841(a)(1). As part of the plea agreement, the charges against the Jefferies' children were dropped. Both defendants were sentenced to three years on the tax count. Jimmy Jefferies was sentenced to a 10–year sentence on the drug count to run consecutively with the tax sentence and to be followed by a 5–year term of supervised release. In addition, the defendants were jointly and severely fined $100,-000. They now appeal those sentences.

## FACTS

Twice in December 1986, the government executed search warrants on the Jefferies' residence. On the first occasion, a package containing 13 grams of cocaine was seized from a toilet in the Jefferies' bathroom. At the time of the search, the bathroom was occupied by a painter. The Jefferies denied any knowledge of the cocaine. At this time and during a second search later that month, some of the family's business records were seized. The defendants sought to suppress the information on the grounds that the affidavit supporting the warrant was based on intentional misstatements. After the defendants filed a suppression motion, they entered into plea negotiations with the government.

Negotiations were held between the attorneys for the defendants, Victoria Little and Christopher Duncan, and Assistant United States Attorney Edward Lukemire. After some preliminary negotiations over the phone, the parties held a meeting to work out a final agreement. Lukemire brought a draft plea agreement to the meeting which was held in Macon, Georgia on October 10, 1988. At that meeting, the defendants and Lukemire worked out a final agreement which was signed by the defendants, their attorneys and Lukemire. Lukemire and the defendants presented the plea to the district court that same day.

The plea agreement provided that both Betty and Jimmy Jefferies would plead guilty to tax evasion and Jimmy Jefferies would plead guilty to possession of cocaine.[1] The agreement was explicitly amended during the negotiations to stipulate that the quantity of cocaine involved in the drug offense was 13 grams. The plea also indicated that the parties had agreed that the sentence would be at most ten years on the drug count and left the sentence on the tax count to the court's discretion. In addition, a reference to allowing the court discretion to fine the defendants was also deleted. The defendants agreed to forfeit substantial assets, including their home. The government agreed to drop all the other charges against the Jefferies. The government also agreed not to bring charges against the Jefferies for any other offenses currently known to them. Sharon and Kenny Jefferies agreed to the forfeiture of their assets in exchange for the charges against them being dropped.

The sentencing hearing was held December 19–20, 1988. By that time Mr. Lukemire had left government service and the case was transferred to Assistant United States Attorney Miriam Duke. Ms. Duke interpreted the plea agreement as not re-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The original version of the plea agreement drafted by Mr. Lukemire with the modifications made during the plea negotiations are attached to this opinion as an appendix.

quiring the government to "stand mute at sentencing." Government's Brief at 6. Consequently, the government provided the probation officer compiling the presentence investigation reports on the Jefferies with information indicating that the Jefferies had been involved in large scale drug trafficking. At the sentencing hearing the government presented this evidence to support the presentence reports over the objections of the defendants that the government was violating the plea agreement. Based upon this information, the district court found that the offense involved 15 kilograms of cocaine and applied this finding to both defendants. After accepting the pleas and the agreement, the court imposed sentence. In this appeal the defendants raise four objections to the sentence imposed by the district court. Only the claim relating to the plea agreement merits extended discussion.[2]

## DISCUSSION

Both defendants point to several violations of the plea agreement both by the court and by the government. The government, in their response to these contentions, argues that the plea agreement was not violated. The government's arguments are based on interpretations of the plea agreement that are inconsistent with the agreement. The differing constructions are based on different theories of how a plea agreement should be interpreted. Therefore, we begin our analysis of this claim with an summary of the rules applicable to the construction of a plea agreement. We then proceed to examine the plea agreement to determine which interpretation of the agreement is correct, and conclude with an analysis of the consequences of our interpretation of the agreement.

### A.

 Plea agreements are interpreted and applied in a manner that is sometimes likened to contractual interpretation. This analogy, however, should not be taken too far. In *In re Arnett*, 804 F.2d 1200, 1203 (11th Cir.1986), this court summarized the standards applied to interpretation of plea agreements. First, the court noted that a "hyper-technical reading of the written agreement" and "a rigidly literal approach in the construction of language" should not be accepted. *Id.* Second, the written agreement should be viewed "against the background of the negotiations" and should not be interpreted to "directly contradic[t] [an] oral understanding." *Id.* Finally, a plea agreement that is ambiguous "must be read against the government." *Id.* (citing *United States v. Harvey*, 791 F.2d 294, 303 (4th Cir.1986)). The rational for this method of interpretation is that a plea agreement must be construed in light of the fact that it constitutes a waiver of "substantial constitutional rights" requiring that the defendant be adequately warned of the consequences of the plea. *Arnett*, 804 F.2d at 1203.

In this case the defendants challenge the government's interpretation of the plea agreement. The defendants allege that Ms. Duke's conduct at the sentencing proceeding was inconsistent with the agreement they worked out with Mr. Lukemire. The defendants base much of their arguments on oral understandings and the negotiating history of the agreement. To support these arguments, the defendants supplemented the record on appeal with the original draft of the plea agreement and affidavits from their attorneys who attended the plea negotiations. The affidavits submitted by the defendants relate to oral agreements and understandings made between Lukemire and the defendants' attorneys. The government has not denied these oral agreements and understandings. Rather, the government takes the position that the written plea agreement does not preclude either its conduct at sentencing or

**2.** The defendants also argue that (1) Jimmy Jefferies's prior convictions were improperly considered by the district court; (2) the defendants were denied an adequate opportunity to present mitigating evidence; and (3) the information

supporting the finding that the offense involved 15 kilograms of cocaine was unreliable. We affirm the district court's resolution of these issues based on 11th Circuit Rule 36–1.

the actual sentences the defendants received. Therefore, in resolving this claim, we accept the allegations of the defendants contained in the affidavits filed in this court.[3]

### B.

■■■ The first dispute concerns the issue of the five year term of supervised release imposed on Jimmy Jefferies. The plea agreement does not mention supervised release. In addition, the issue apparently was not discussed either during the plea negotiations or during any of the proceedings before the district court. Therefore, it cannot be said that the term of supervised release is an explicit part of the plea agreement. In paragraph 6(b) of the agreement, the government agreed that "any sentence of imprisonment" for count two "not exceed ten years." The defendant argues that this language limits the court's ability to impose a term of supervised release. The government, on the other hand, argues that since it was not mentioned, the question of supervised release was left to the judge's discretion.

We decline to decide whether the district court's imposition of this term violated the agreement because the defendant did not raise this issue in the district court. Generally, we do not consider arguments raised for the first time on appeal. *Cf.* Fed.R. Crim.P. 51 (party need not "except" to rulings, but must make "known to the court the action which that party desires the court to take or that party's objection to the action of the court and the grounds therefore"). Recently, we have confirmed that this doctrine applies to errors regarding the sentence imposed. *See United States v. Prichett*, 898 F.2d 130, 131 (11th Cir.1990) (per curiam) (government's failure to object to district court's departure from sentencing guidelines "fatal" to its appeal). The purpose of this doctrine is to give the district court the opportunity to correct its errors. *Id.* Because Jefferies did not object to the term of supervised release as a violation of plea agreement, he has waived the right to appeal this issue.[4]

We note that Jefferies had ample opportunity to raise this issue after his sentence was imposed. While the defendant did not object to the term of supervised release, he did object to other aspects of the sentence after it was imposed. Jefferies has not presented this court with a reason for his failure to object at that time. In addition, the record reflects that following the imposition of the sentence, the court took a recess, sentenced several of the co-defendants, and then received two motions from the Jefferies' attorneys. Jimmy Jefferies' attorney did not raise this issue at that time. Finally, no post trial motions were made even though the court had indicated a willingness to hear testimony on the meaning of the agreement. Jefferies had the opportunity to raise the issue of whether the term of supervised release violated the plea agreement; because he failed to do so, he has waived his appeal on this issue.[5]

---

3. We note that, in addition to not contesting the allegations of the defendants, the government has not asked for this matter to be remanded to the district court for an evidentiary hearing. Given the fact that the government has made *no* effort to deny these allegations, "we must consider the record as we find it." *United States v. Tobon–Hernandez*, 845 F.2d 277, 280 n. * * (11th Cir.1988). As we noted in *Tobon–Hernandez*, it is the responsibility of the attorneys for both the government and the defendant to "clear up the confusion" concerning "the intent of the parties when entering into a plea agreement."

4. We also note that there is no evidence on the record regarding whether the term of supervised release violates the plea agreement. The trial record is silent, and unlike the other issues raised concerning the meaning of the agreement, the affidavits filed by the attorneys present at the plea negotiations do not address this issue.

5. Jefferies also argues that the court violated Fed.R.Crim.P. 11(c)(1) when it failed to notify him of the mandatory term of supervised release that the court was required to impose under the terms of 21 U.S.C. § 841(b). Jimmy Jefferies was not notified either by the court or by his counsel of the possibility of this sentence, and he argues that this violation should be remedied by a reduction of his sentence to comply with his understanding. As with the claim that this term violated the plea agreement, Jefferies did not raise the Rule 11 error before the district court. We therefore find that any Rule 11 error with respect to this part of the sentence was also waived.

■ The second dispute concerns the $100,000 fine imposed jointly and severally on both of the defendants. As to Jimmy Jefferies, the fine was imposed on the drug count, as to Betty Jefferies, the fine was imposed on the tax count. The affidavits establish that the issue of the fine was subject to negotiations by the government and the defendants. As noted in the Appendix, the original draft of the agreement explicitly left the issue of the fine to the "discretion of th[e] Court." *See* Plea Agreement at ¶ 6(b). The affidavits filed by the defendants' attorneys explain that the reference to the fine was deleted after the government agreed that "no fine would be imposed." Duncan Affidavit at ¶ 9; *see also* Little Affidavit at ¶ 4 (intent of agreement was to allow the Jefferies to keep some of their property free from government claims). The defendants objected to the fine after it was entered. R6–215–216.

The record reflects that there was substantial negotiation over the financial implications of the plea. In addition, both versions of the agreement included an attached schedule of property that was to be retained by the defendants. We find this case indistinguishable from the situation in *Arnett*. In *Arnett*, this court construed a plea agreement in which the defendant assented to the forfeiture of the $3000 on his person at the time of the arrest as prohibiting the government from seeking forfeiture of the defendant's house and farm. During the course of the negotiations concerning the plea in *Arnett*, the government's attorney stated that the government had no interest in the farm. 804 F.2d at 1202. The court rejected the argument that the agreement did not restrict the government from seeking further forfeitures. In addition, the court refused to hold that the defendant's statement in open court that there were no other agreements with the government precluded him from

challenging the forfeitures. *Id.* at 1203–04. We find, based on the uncontroverted evidence regarding the intent of the parties, that the plea agreement precluded the imposition of the $100,000 fine.

■ The final dispute concerns the stipulation in the plea agreement that "quantity involved ... is approximately 13 grams of cocaine." Plea Agreement at ¶ 5(a). This term was added to the plea agreement during the negotiations. On the face of the agreement, the stipulation only applies to Jimmy Jefferies. During the sentencing hearing, AUSA Duke introduced evidence to show that the Jefferies were involved in a large scale cocaine operation. Based upon this information the court disregarded the stipulation and found that the quantity involved was 15 kilograms.[6] The court applied this finding to both defendants.[7] The defendants argue that this conclusion was prohibited by the plea agreement. In addition, they argue that the government's attempts to prove that more than 13 grams were involved violates the agreement. The defendants objected to this evidence and to the finding. R6–192–197.

The defendants base their argument that the finding was prohibited by the agreement on the plea negotiations. The appendix shows that the stipulation was added to the agreement during the negotiations. In addition, the affidavits establish that the 13 gram stipulation was intended to prevent precisely the type of finding that was made at sentencing. Little described the negotiations regarding this count in the following manner:

> During the plea negotiations, affiant made calls to the United States Parole Commission and reported to Mr. Lukemire her findings therein. Affiant also conferred with Mrs. Sandra Popson, attorney for co-defendant Griggs, and dis-

---

6. The defendants explain that the finding that the offense involved 15 kilograms rather than the 13 grams agreed to in the stipulation is significant because it removes the possibility that the defendants will be paroled. *See* Little Affidavit at ¶ 4; Duncan Affidavit at ¶ 11. The government does not dispute this characterization.

7. With respect to Jimmy Jefferies, the finding applied to the drug count. With respect to Betty Jefferies, the finding was applied to the tax count since Betty Jefferies had not pled guilty to a drug offense.

cussed the terms of the plea agreement with both Mrs. Popson and Mr. Lukemire, including any parole considerations arising from the entry of the plea. Christopher W. Duncan, attorney for Betty Jefferies, was also consulted and took part in the discussions concerning the joint plea agreement. Affiant advised Mr. Lukemire that her client would be willing to enter a guilty plea to Count 2 of the indictment, provided that he could be assured that the offense severity category would be no higher than a Level 4 for parole purpose. Mr. Lukemire agreed to those terms and also agreed to stipulate, in writing, that the offense involved approximately 13 grams of cocaine. Mrs. Popson reached a similar agreement with Mr. Lukemire and the plea bargain entered into by her client also specified the amount of contraband involved in that case. Specifically, affiant advised Mr. Lukemire that the Parole Board had stated that the parole guidelines required service of 12 to 18 months imprisonment.

Little Affidavit at ¶ 2. We conclude that the agreement precluded the finding that Jimmy Jefferies was involved in transactions other than the 13 grams stipulated to in the agreement.

Betty Jefferies' attorney also discussed the parole consequences of the agreement with the government. While the stipulation did not explicitly apply to her, the government agreed that based on the plea Betty Jefferies would serve a maximum of 12 months and could possibly receive probation. Duncan Affidavit at ¶¶ 7–8. Betty Jefferies argues that such an agreement implies that the court would not make the 15 kilogram finding. We agree. While the government and the defendant cannot stipulate the parole consequences of a particular sentence, they can agree that the defendant will admit to particular conduct and the government will not attempt to show that other conduct was involved. In this case, the parties made precisely that type of agreement. An agreement that Betty Jefferies would serve no more than 12 months by its very nature presumes that a finding that she was involved in a 15 kilo-gram cocaine offense would not be made. Therefore, we hold that the agreement precluded the 15 kilogram finding applied to Betty Jefferies.

■ The government argues that the plea agreement did not restrict them from producing evidence at sentencing. The affidavits describing the negotiations, however, explicitly contradict this contention. *See* Duncan Affidavit at ¶ 8 (the government agreed that it "would make no attempt to influence the court or the parole board by 'packing' the pre-sentence report with prejudicial material"). The government also agreed to make no recommendation at all on the tax count or on the issue of whether Jimmy Jefferies would receive a concurrent or consecutive sentence. Little Affidavit at ¶ 3; Duncan Affidavit at ¶ 8. The plea agreement was changed to reflect this arrangement. *See* Appendix at ¶ 6(b). In addition, the agreement stated that the government would not seek additional "prosecutions" for "offenses which are now known to the government." Plea Agreement at ¶ 6(c).

We find that this case is controlled by our decision in *United States v. Tobon–Hernandez*, 845 F.2d 277 (11th Cir.1988). In that case the government and the defendant agreed to allow the defendant to plead guilty to cocaine possession and conspiracy counts and stipulated that the 14 kilograms found in the defendant's car at the time of his arrest was the amount of cocaine involved in the offense. The government agreed to drop the count alleging possession of some 432 kilograms found in a house the defendant had left just prior to his arrest. At sentencing, however, the government introduced the evidence pertaining to the 432 kilograms. On appeal the government argued that the evidence was properly considered in connection with the conspiracy count. On the basis of the Rule 11 hearing, however, this court found that the plea excluded the 432 kilograms from the conspiracy. The court described the Rule 11 hearing in that case in the following manner:

In order to clarify the scope of the conspiracy charge, defense counsel stated to

the court at the rule 11 hearing, *'We agreed and stipulated that the conspiracy only pertains to Count II of the 14 kilos approximately found in the car.'* (Emphasis added.) When the district court asked the prosecutor to confirm defense counsel's version of the stipulation which limited the conspiracy count to the 14 kilograms found in the automobile, the prosecutor replied, *'Your Honor, I would agree with that; ... so, I would agree with the statement as far as we are concerned with the conspiracy. We have no problem tying that in solely to Count II.'* (Emphasis added.) 845 F.2d at 279. This court construed the agreement in that case as prohibiting the government from introducing evidence indicating that the defendant was connected to the 432 kilograms found in the house. *Id.* Similarly, based on the uncontradicted evidence of the agreements made in this case, we find that the government was prohibited from introducing evidence implicating the defendants in illegal drug offenses other than the 13 grams found in the defendants' house at the time of their arrest.

### C.

■ Fed.R.Crim.P. 11(e)(3) provides:

Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

The district court accepted the plea agreement. R6–196. When a plea agreement has not been followed by the government or the court, there are two possible remedies. The court can order specific performance of the agreement or afford the defendant the opportunity to withdraw the plea.

*Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). While the choice of a remedy is within the discretion of the court rather than the defendant, the remedy of withdrawal of the guilty plea has not been favored in this circuit. *See Tobon–Hernandez,* 845 F.2d at 281 (remanding for specific performance), *United States v. Nelson,* 837 F.2d 1519, 1525 (11th Cir.) (same), *cert. denied,* 488 U.S. 829, 109 S.Ct. 829, 102 L.Ed.2d 58 (1988); *Arnett,* 804 F.2d at 1204 (granting writ of mandamus and ordering specific performance). In this case, the defendant requests specific performance rather than a withdrawal of the plea.

We VACATE that part of the sentence that imposes a $100,000 fine against the two defendants. We MODIFY that part of the district court's finding that the quantity of cocaine was 15 kilograms and direct the entering of a finding that the quantity involved as to each defendant was 13 grams of cocaine. In all other respects, the sentence is AFFIRMED.[8]

VACATED in part, MODIFIED in part, and AFFIRMED in part.

### APPENDIX [*]

In the United States District Court

Middle District of Georgia

Macon Division

Criminal Number 87–36–MAC (WDO)

United States of America,

versus

Jimmy Lee Jefferies, et al.

### PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned

---

**8.** In *Tobon–Hernandez,* the panel of our court remanded for resentencing. We find that this would merely add judicial labor to the district court in this case. Nevertheless, it is important that the United States Parole Commission be furnished with a copy of this opinion for the files on both defendants. This will insure that the Commission will use the "quantity involved in the offense" of 13 grams of cocaine rather than the quantity of 15 kilograms determined by the district court in contravention to the terms

of the plea agreement. The importance of assigning the proper severity rating for purposes of parole is discussed in *Tobon–Hernandez,* 845 F.2d at 280.

[*] This appendix was created by comparing the first draft of the plea agreement authored by the government with the final draft of the agreement signed by the parties. The first draft of the agreement was included as an exhibit filed with the appellants' brief and made part of the

attorney, and the defendants, JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES, and their undersigned attorneys, as follows:

(1)

JIMMY LEE JEFFERIES a/k/a "Big Jim" and BETTY JEFFERIES, by their signatures, acknowledge their right to remain silent and expressly waive that right with respect to this agreement.

(2)

JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES and KENNY JEFFERIES acknowledge their right to the assistance of counsel, which they have exercised, as evidenced by the signature of their attorneys, indicating that their attorneys have witnessed and approved this agreement.

(3)

JIMMY LEE JEFFERIES and BETTY JEFFERIES understand that they have an absolute right to persist in their not guilty plea; that they have the right to be tried by a jury; that at such trial they have the right to require the Government to prove the entire case against them beyond a reasonable doubt; that they have the right not to testify against themselves or be compelled to incriminate themselves; and that they have the right to confront and cross-examine the witnesses against them and to present witnesses on their own behalf. JIMMY LEE JEFFERIES and BETTY JEFFERIES understand that by their guilty plea, they expressly waive those rights and acknowledge that no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of sentence. ~~This case is not subject to the Federal Sentencing Guidelines, effective November 1, 1987.~~

(4)

JIMMY LEE JEFFERIES and BETTY JEFFERIES acknowledge that they have reviewed and discussed the pending indictment against them in this matter with their attorney and their attorneys have explained to them their understanding of the Government's evidence.

(5)

JIMMY LEE JEFFERIES and BETTY JEFFERIES being fully cognizant of their rights, and in exchange for the considerations to be made by the United States as set forth in paragraph 6, below, agree pursuant to Rule 11(e)~~(4)~~, Federal Rules of Criminal Procedure, as follows:

(a) That JIMMY JEFFERIES will knowingly and voluntarily plead guilty to (1) Count Two of the pending indictment which charges him with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a). ~~The quantity involved in this count is approximately 13 grams of cocaine.~~ The maximum possible sentence for this offense is twenty years imprisonment, a $1,000,000.00 fine, and a mandatory assessment of $50.00; (2) COUNT TWENTY of the pending indictment, which charges him with knowingly subscribing to a tax return that was false in a material respect, in violation of 26 U.S.C. § 7206(1). The maximum possible penalty for this offense is three years imprisonment, a fine of $100,000.00 or both.

(b) BETTY JEFFERIES will knowingly and voluntarily plead guilty to COUNT TWENTY of the pending indictment, which charges that she knowingly subscribed to a tax return that was false in a material respect, in violation of 26 U.S.C. § 7206(1). The maximum possible penalty is three years imprisonment, a $100,000.00 fine, or both.

(c) JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES agree to forfeit to the United States of America all right, title

---

record in this case by this court's order of August 2, 1989. Text appearing in standard type appears in both versions of the agreement. Text appearing in ~~this type~~ appeared in the draft but was deleted from the final agreement. Text appearing in ~~this type~~ did not appear in the draft but was added to the final agreement.

and interest in all of the real and personal property seized from them during 1986 and 1987, ~~including but not limited to, property~~ ~~as~~ listed in the Schedule of Forfeited Property attached hereto as Exhibit "A" and incorporated herein~~, with the exception of~~ ~~that property listed in Exhibit "B" and in~~ ~~paragraphs 6(f) and (g)~~.

(d) The forfeiture of all property in accordance with this agreement is agreed to and made pursuant to 21 U.S.C. § 853 and/or 21 U.S.C. § 881.

(e) JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES agree to take any and all steps necessary to transfer clear title to the United States of all property forfeited pursuant to this agreement. These steps include, but are not limited to, the surrender of title, signing of consent decrees/orders, dismissing claims and answers, ~~signing a stipulation of facts regarding the transfer and basis for the forfeiture~~ and signing any other documents necessary to effectuate the aforesaid transfer of clear title~~, subject to the claims of third parties,~~ to the United States.

(f) JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES release the United States of America, its agents and employees, from any and all claims of whatever nature that they may have resulting from the execution of any search warrants and/or the seizure of any and all property seized and/or attached in connection with the investigation related in any way to criminal case number 87–36–MAC(WDO) and/or civil case number 87–360–3–(MAC).

(g) JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES agree, pursuant to 28 U.S.C. § 2465, that they shall not be entitled to costs, nor shall the person or persons who made the seizure of any and all property seized and/or attached in connection with criminal case number 87–36–MAC(WDO) and/or civil case number 87–360–3–(MAC), nor any attorney, agent or employee of the United States of America, be liable to suit or judgment on account of

the aforesaid seizures ~~there being probable cause shown for the seizures~~.

(6)

In exchange for the consideration set forth in paragraph 5, above, the United States Attorney for the Middle District of Georgia agrees as follows:

(a) That he will ~~accept~~ ~~except~~ the guilty plea of JIMMY LEE JEFFERIES and BETTY JEFFERIES as provided in paragraph 5, above, in full satisfaction of all federal criminal charges pending against the defendants in Indictment number 87–36–MAC(WDO) and ~~88–13–MAC(WDO)~~.

(b) In consideration of all the foregoing, the United States Attorney agrees, pursuant to Rule 11(e)(1)(C) ~~and 11(e)(4)~~, Federal Rules of Criminal Procedure, that any sentence of imprisonment pursuant to the defendant JIMMY LEE JEFFERIES' guilty plea on COUNT TWO as aforesaid not exceed ten years ~~but may be less than ten years at the discretion of the Court~~. Nothing herein shall limit the discretion of this Court as to the imposition of a sentence of imprisonment ~~or probation~~ on COUNT TWENTY ~~or the imposition of a fine on either or both charges~~ ~~and it is within the Court's discretion whether to make said sentences run concurrent or consecutive as to either JIMMY LEE JEFFERIES or BETTY JEFFERIES~~. Nothing herein shall limit the discretion of the Court, upon the finding of a violation of probation, to order the execution of any suspended portion of a sentence of imprisonment.

(c) That ~~we~~ ~~the United States Government~~ will seek no additional prosecutions against JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, ~~or~~ ~~and~~ KENNY JEFFERIES in ~~the Middle District of Georgia~~ ~~Federal Courts~~ concerning offenses which are now known to the Government up to and including the date of this agreement. ~~The United States is aware of state charges against JIMMY LEE JEFFERIES in the Superior Court of Jasper County. The United States will recommend to the District Attorney of the Oemulgee Circuit that such charges should be dismissed. Should any jurisdictions, in~~

~~cluding various state jurisdictions, not a party to this agreement seek to institute such criminal proceedings based upon the facts underlying indictment number 87-36-MAC(WDO) and 88-13-MAC(WDO), the United States will recommend that such proceedings not be instituted.~~

(d) That the United States shall dismiss with prejudice from the Complaint for Forfeiture in Rem in civil case number 87–360–3–MAC all property listed on the Schedule of Property to be Released attached hereto as Exhibit "B" and incorporated herein.

(e) In exchange for the release of the property listed in Exhibit "B", attached hereto, JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES, shall hold and save harmless the United States of America, its agents and employees, from any and all claims of whatever nature that might result from the seizure of the property listed in Exhibit "B", the release of the aforesaid property pursuant to this agreement, and the prosecution of criminal case number 87–36–MAC(WDO) and/or civil case number 87–360–3–MAC insofar as the prosecutions relate to the aforesaid property.

~~(f) All other property of Defendants real or personal no heretofore seized by the Government, or listed on Exhibits "A" or "B" shall remain the property of the Defendants and shall not be subject to forfeiture in Criminal Number 87-36-MAC(WDO) or Criminal Number 87-360-3(MAC).~~

~~(g) All deposits for bonds shall be returned to Defendants on the property listed in Exhibit "A", less actual advertising costs not to exceed $50.00 per bond incurred by the Government subsequent to the seizure of the property.~~

### (7)

The United States of America agrees that it will dismiss charges in the pending indictment against SHARON JEFFERIES and KENNY JEFFERIES~~, with prejudice~~.

### (8)

The United States of America, JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES hereby agree that any breach of this agreement by the defendants occasioned by a failure to forfeit to the United States the property attached and seized will:

(a) Not relieve the defendants JIMMY LEE JEFFERIES and BETTY JEFFERIES of their obligation to continue in their original plea of guilty;

(b) Permit the Government to reinstate and proceed with prosecution on any other charges referred to in indictment 87–36–MAC(WDO);

(c) Permit the Government to instigate and proceed with any prosecution of any other offenses now known to the Government.

### (9)

This agreement constitutes the entire agreement between the defendants JIMMY LEE JEFFERIES, BETTY JEFFERIES, SHARON JEFFERIES, and KENNY JEFFERIES and the United States of America, and no other promises or inducements have been made, directly or indirectly, by any Agent of the United States, including any Assistant United States Attorney concerning any plea to be entered in this case. In addition, JIMMY LEE JEFFERIES and BETTY JEFFERIES state that no person, directly or indirectly, has threatened or coerced them to do or restrained them from doing anything in connection with any aspect of this case, including entering a plea of guilty.

### (10)

This agreement shall become effective upon the Court's acceptance of this agreement and the Court's acceptance of the pleas of guilty by the defendants JIMMY LEE JEFFERIES and BETTY JEFFERIES.

SO AGREED, this 10th day of October, 1988.