FAY, Senior Circuit Judge,
dissenting:
Most respectfully, I dissent.
As is often the case, the answer provided by any authority depends upon the question asked. The majority states that “This case presents the question of whether appellant Jody Allen waived his right to seek federal habeas corpus review of his state court conviction when, as part of a plea bargain, he agreed not to seek ‘parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment.’ ” The majority then concludes that the answer to that question is “no.”
In my opinion, by asking the wrong question the majority has arrived at the wrong conclusion. The question this case presents is whether or not the appellant agreed, in exchange for the state dropping or foregoing its effort to obtain a death sentence, to spend *674 the rest of his life in the penitentiary. The clear unambiguous answer to that question is “yes.”
Appellant Alen was accused of having committed a series of horrible crimes including murder. The prosecution had made it clear it would seek the death penalty. Alen and his lawyers negotiated a deal. The deal was that Alen would enter guilty pleas and the state would recommend a sentence of life in prison. That was the contract.[1] The state abandoned its efforts to have Alen executed and Alen agreed to spend the rest of his life in jail.
In an effort to foreclose exactly what the majority does in this case, the parties through their attorneys spelled out that A-len would not seek “parole, commutation of his sentence, reprieve, or any other form of relief from life imprisonment.” (emphasis added). To suggest, as the majority does, that such language is ambiguous is simply wrong and contrary to reality. And, although it is always dangerous to inject such into judicial proceedings, this conclusion is totally contrary to common sense.
The law requires that anyone entering into such an agreement do so “knowingly, intelligently, voluntarily, and with the able assistance of counsel.” Alen did just that. The majority takes the position that because no one mentioned “federal habeas corpus” Allen did not enter into a legally binding contract (valid waiver). What words could be more inclusive than “any other form of relief from life imprisonment?” Were the lawyers required to specify the federal statutes involved? And, if they had done so would Alen have known any more than he did? Are courts now required to conduct hearings and attempt to educate defendants as to collateral attacks under state law, collateral attacks under federal law, the laws surrounding pardons, parole and commutation of sentences? If so, I suggest there will be few, if any, valid waivers and plea agreements.
The majority relies upon the canon of construction known as ejusdem genens in limiting the general terms of the agreement. In discussing this rule, Black’s Dictionary cautions that “The rule, however, does not necessarily require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention.” Black’s Law Dictionary 517 (6th ed.1990). In my opinion, the intention of the parties to this agreement could not be clearer.
If there were an ambiguity in this contract, and I find none, it seems to me that the canon of construction most appropriate would be the rule of contra proferentum (against the party who proffers or puts forward the thing). If plea bargains are governed by contract principles and any ambiguities are present, they should be resolved against the drafter. United States v. Hawley, 93 F.3d 682, 690 (10th Cir.1996). In this case the prosecutor was extremely reluctant to enter into any agreement because of the concern about the law of Georgia and whether or not anyone could be sentenced to life in jail with no hope of any reduction under any label. Defense counsel drafted this contract![2] The defendant, through his attorneys, convinced *675 the prosecutor that he would never do exactly what our court allows him to do today. He gains this relief by convincing the majority that the document drafted by his lawyers is ambiguous. Life is stranger than fiction.
There is nothing complicated about this case. Allen committed some horrible crimes. The state of Georgia intended to seek the death penalty. Allen and his lawyers struck a good bargain for Allen. He would not be executed in return for entering pleas of guilty and agreeing to spend the rest of his life in jail. I would hold him to his agreement.
With the greatest respect for my brother and sister, it seems to me that the majority opinion will send a strong signal to all state prosecutors to not enter into plea agreements of this nature. And, in my opinion, that is not good for the judicial system. The agreement struck by the parties was a fair one and I would uphold and enforce it.

. Plea agreements are controlled by the principles applicable to contracts. As pointed out by the majority opinion, this agreement actually spelled out that it could be enforced by specific performance or injunctive relief.

. In response to my suggestion that if we are going to rely upon any canon of construction it should be the Rule of Contra Preferentum the majority cites three cases which it says support the proposition that ambiguities in plea agreements are always resolved against the government. See San Pedro v. United States, 79 F.3d 1065, 1074 n. 5 (11th Cir.1996) (Goettel, J. dissenting); United States v. Rewis, 969 F.2d 985, 988 (11th Cir.1992); United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir.1990). I'm perplexed for several reasons. Initially I note that the only indication in any of these opinions as to who the drafter was is in Jefferies, 908 F.2d at 1522 where it is pointed out that the Assistant United States Attorney "brought a draft plea agreement to the meeting____" Jefferies, 908 F.2d at 1522. In my opinion it is safe to assume that unless it is clear to the contrary all plea agreements are drafted by the government. Such being the case these authorities support, rather than refute, the usual approach concerning ambiguities in contracts. Secondly, I fail to see how the mere fact that ineffectiveness of defense counsel has been raised would damage the "law" surrounding the interpretation of contracts.