[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15390
Non-Argument Calendar

_____

D. C. Docket No. 05-00009-CR-HL-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY JOHNNY THOMPSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 13, 2006)

Before TJOFLAT, BLACK and RONEY, Circuit Judges.

PER CURIAM:

Jerry Johnny Thompson, Jr. pled guilty to conspiracy to possess more than 1000 kilograms of marijuana from April 4, 2004 through November 8, 2004, 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii), 846. This appeal essentially challenges his 327-month sentence on the ground that in assessing the sentence the district court improperly relied upon information provided by the government in breach of its plea agreement and in breach of an earlier promise of immunity for his cooperation. Although we affirm the judgement of the district court, this is the only issue that needs discussion.

The record is insufficient to make a decision on Thompson's claim that he received ineffective assistance of counsel because his attorney did not object to the government's breach of the plea agreement; *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002), *United States v. Espino-Perez*, 798 F.2d 439, 440-41 (11th Cir. 1986).

To the extent that Thompson challenges his sentence for any additional reason, such as whether the district court improperly enhanced Thompson's sentence for possession of a weapon and for recruiting a minor (issues upon which the government properly argues that the district court properly determined the merits in any event), it is foreclosed by the waiver contained in his plea agreement. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001). The district court

specifically questioned Thompson about his sentence appeal waiver. In questioning Thompson, the district court stated that he could appeal on two grounds: ineffective assistance of counsel and an illegal application of the guidelines and Thompson indicated that he understood. (R5 at 14-15). Thompson does not allege there was an illegal application of the guidelines except to the extent the district court relied on information produced in violation of two government agreements.

As to the alleged breach of a plea agreement, this Court has, in the past, held that an appeal waiver does not prevent a defendant from appealing an alleged breach of the plea agreement. *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). Thompson argues that the government, in order to secure his conviction and sentence, breached the plea agreement by using information he provided to them.

According to Thompson, the government made two promises. The first promise was an informal immunity agreement that Thompson asserts he made with the United States Attorney in Beaumont, Texas, that formed the basis of his cooperation with the DEA. The second promise, which Thompson contends was written in the plea agreement, states that the information provided to the

3

government would not be used against him, and that his sentence would be reduced if he provided substantial assistance.

The issue of whether the government breached a plea agreement is a question of law, to be reviewed *de novo*, and since no objection was raised in the district court, we review for plain error. *United States v. Mahique*, 150 F.3d 1330, 1332 (11th Cir. 1998). A material promise by the government, which induces the defendant to plead guilty, binds the government to that promise. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 496, 499, 30 L.Ed.2d 427 (1971). Whether the government violated a plea agreement is judged according to the defendant's reasonable understanding of the agreement at the time he entered the plea as determined according to objective standards. *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992). The standards applied to the interpretation of a plea agreement are as follows: (1) hyper-technical and rigid construction of the language in a plea agreement are unacceptable, (2) the written agreement should be viewed against the background of the negotiations and should not be interpreted to contradict directly an oral understanding, and (3) an ambiguous plea agreement must be interpreted against the government. *United States v. Jeffries*, 908 F.2d 1520, 1523 (11th Cir. 1990).

There was no error, plain or otherwise, because the record does not support the allegation that the government breached either of the alleged agreements.

In the first instance, there is no evidence that an informal immunity agreement existed. The only mention that there might be an agreement was made by Thompson during his sentencing, and he only stated that he had been told that if he assisted the officials in Beaumont, Texas in apprehending his now deceased co-conspirator Resendez, he might receive a lighter sentence. Assuming, *arguendo*, that this promise was made, Thompson's own description suggests that it was not an immunity agreement. Moreover, there is no mention of the immunity agreement elsewhere in the record. At the change of plea hearing, Thompson asserted that he had not been promised anything. Without the existence of an agreement, there can be no breach.

There is similarly no plain error with regards to the written plea agreement. Thompson's plea agreement stated that "the United States agrees that any self-incriminating information which was previously unknown to the United States and is provided to the United States by [Thompson] in connection with [his] cooperation and as a result of [his] plea agreement to cooperate will not be used in determining the advisory guideline range." These terms unambiguously indicate that the only information that would not be used in determining his advisory

5

guideline sentence was that provided (1) by Thompson, (2) after the date on which he entered the plea agreement, and (3) because of the existence of the plea agreement. Thus, the government is only precluded from using information provided after Thompson's guilty plea. The evidence it produced at the sentencing hearings in support of the advisory guidelines calculations was gathered before Thompson was indicted. Consequently, the government did not breach the written plea agreement.

**AFFIRMED.**