[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10671
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 12, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00212-CR-ORL-19-KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS VAZQUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 12, 2009)

Before CARNES, MARCUS and WILSON, Circuit Judges.

MARCUS, Circuit Judge:

Carlos Vazquez appeals from his sentence of 180 months' imprisonment for

conspiracy with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B)(ii), and 846. In his first appeal, we vacated his original sentence of 110

months' imprisonment upon holding that it was procedurally unreasonable because the district court based it on an impermissible factor -- its disagreement with how the Guidelines' career offender provision, U.S.S.G. § 4B1.1, applied. United States v. Vazquez, 240 F. App'x 318 (11th Cir. 2007) (unpublished). In this appeal, Vazquez argues that his new sentence is procedurally unreasonable because the district court refused to consider this factor on remand, which, he says, it now may do under recent Supreme Court case law. After careful review, we affirm.

We review de novo whether a defendant effectively waived his right to appeal. United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993). We review the sentence imposed by a district court for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)). In reviewing sentences for reasonableness, we perform two steps. Pugh, 515 F.3d at 1190. First, we must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,[1] selecting a sentence based on clearly

_____

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to

2

erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall v. United States, 128 S.Ct. 586, 597 (2007)). If we conclude that the district court did not procedurally err, we must consider the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard,'" based on the "'totality of the circumstances.'" Id. (quoting Gall, 128 S. Ct. at 597).

As an initial matter, we agree with Vazquez that he may proceed with this appeal, despite the sentence appeal waiver included in his plea agreement. Waivers of appeal rights are effective if they were knowingly and voluntarily made. Bushert, 997 F.2d at 1351. The waiver can include the waiver of the right to appeal "difficult or debatable legal issues or even blatant error." United States v. Frye, 402 F.3d 1123, 1129 (11th Cir. 2005) (quotation omitted). If a waiver was not effective, the proper remedy is for it to be severed from the agreement. See Bushert, 997 F.2d at 1353. "Plea agreements are interpreted and applied in a manner that is sometimes likened to contractual interpretation," but this analogy is not perfect. United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990). We do not accept a "rigidly literal approach" or a "hyper-technical reading of the

protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

3

written agreement." Id. (quotation omitted). Also, "the written agreement should be viewed against the background of the negotiations." Id. (quotation omitted). Finally, ambiguities are construed against the government. Id.

Vazquez's waiver, providing that if the government appealed "the sentence imposed," then Vazquez would be "released from the waiver" and could appeal "the sentence," was ambiguous. Because the government appealed Vazquez's original sentence, it is arguable that the exception to the sentence appeal waiver was triggered, thereby allowing him to appeal his new sentence. On the other hand, it is also arguable that Vazquez may appeal only the particular sentence that the government has appealed. In light of this ambiguity, we construe the provision in Vazquez's favor, and conclude that this appeal may proceed.

Turning to the merits, Vazquez essentially argues that his new sentence is procedurally unreasonable, see Kimbrough v. United States, 128 S. Ct. 558, 575-76 (2007) (analyzing the district court's consideration of relevant factors and finding that the court committed no procedural error), because the district court refused to consider its disagreement with U.S.S.G. § 4B1.1, the Guideline provision that increases penalties for career offenders, in imposing his sentence. We are unpersuaded. We previously addressed this very issue in United States v. Williams, 456 F.3d 1353 (11th Cir. 2006), where the district court had based its

4

decision, in part, on its disagreement with Section 4B1.1. In reaching our decision, we noted that Section 4B1.1 encapsulates the congressional policy articulated in 28 U.S.C. § 994(h) that "repeat drug offenders receive sentences 'at or near' the enhanced statutory maximums set out in § 841(b)," and that by disregarding Section 4B1.1, the district court impermissibly "ignored Congress's policy of targeting recidivist drug offenders for more severe punishment." Id. at 1370. Because the district court ignored this congressional policy, among other things, we ultimately vacated Williams' sentence.[2] Applying Williams here, then, the district court properly refused to consider its disagreement with the Guidelines' treatment of career offenders when it imposed its sentence on Vazquez, a repeat drug offender.

Vazquez now claims that Williams is no longer binding precedent following the Supreme Court's decision in Kimbrough. "Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is clearly on point." Atlantic Sounding Co. v. Townsend, 496 F.3d 1282, 1284 (11th Cir. 2007) (quotations omitted). Because

---

[2] In Williams, we also held that the sentencing court erred by considering the Guidelines' disparate treatment of crack and powder cocaine offenses. Williams, 456 F.3d at 1369. On this point, Williams was directly overruled by Kimbrough. See United States v. Stratton, 519 F.3d 1305, 1306-07 (11th Cir. 2008).

5

Kimbrough is not "clearly on point," and rather, supports the reasoning we employed in Williams, Vazquez's argument fails.

In Kimbrough, the Supreme Court held that a sentencing court may consider the Guidelines' disparate treatment of crack and powder cocaine offenses as part of its consideration of § 3553(a)(6), the need to avoid sentencing disparities. United States v. Vega-Castillo, 540 F.3d 1235, 1238 (11th Cir. 2008). The Supreme Court based its decision in part on its conclusion that Congress did not explicitly direct the Sentencing Commission to adopt Guidelines that punish crack and powder cocaine offenses according to a particular ratio. Kimbrough, 128 S. Ct. at 570-73. In contrast, the Court noted that "Congress has specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders 'at or near' the statutory maximum." Id. at 571 (citing 28 U.S.C. § 994(h)). It then concluded that (1) the cocaine Guidelines, "like all other Guidelines, are advisory only"; (2) "the Court of Appeals erred in holding the crack/powder disparity effectively mandatory"; and (3) district courts may consider the disparity when determining whether a within-range sentence is "greater than necessary" to serve the objectives of sentencing. Id. at 564.

As this discussion reveals, Kimbrough does not gut our analysis in Williams. To the contrary, the Supreme Court expressly made a distinction between the

6

Guidelines' disparate treatment of crack and powder cocaine offenses -- where Congress did <u>not</u> direct the Sentencing Commission to create this disparity -- and the Guideline's punishment of career offenders -- which was explicitly directed by Congress. Because <u>Kimbrough</u> highlights this distinction, it cannot be read to create a conflict with our <u>Williams</u> decision, nor to suggest that district courts may base their sentencing decisions on any disagreement they may have with the policy behind the career offender guidelines, which are directly driven by congressional pronouncement.

Several of our sister circuits have reached similar conclusions. In these cases, the courts were confronted with defendants that were sentenced as career offenders under Section 4B1.1, though the underlying convictions involved crack cocaine. <u>See</u> <u>United States v. Harris</u>, 536 F.3d 798, 812 (7th Cir. 2008); <u>United States v. Clay</u>, 524 F.3d 877, 878-79 (8th Cir. 2008); <u>United States v. Jimenez</u>, 512 F.3d 1, 9 (1st Cir. 2007). Yet even in these cases, the courts rejected the defendants' claims that their sentences were invalid in light of <u>Kimbrough</u>. In <u>Harris</u>, for example, the Seventh Circuit clarified that "a sentence entered under the career offender guideline, § 4B.1.1, raises no <u>Kimbrough</u> problem because to the extent it treats crack cocaine differently from powder cocaine, the disparity arises from a statute, not from the advisory guidelines." 536 F.3d at 813; <u>see also</u> <u>Clay</u>,

7

524 F.3d at 878-79 ("Although the recent amendments to the sentencing guidelines lowered the offense levels associated with crack in the drug quantity table in U.S.S.G. § 2D1.1, they did not change the career offender provision in § 4B1.1 . . . ."); Jimenez, 512 F.3d at 9 ("the decision in Kimbrough -- though doubtless important for some cases -- is of only academic interest [in a case arising under the career offender guideline]").

Indeed, since the Supreme Court issued Kimbrough, we have held that it did not overrule our prior precedent prohibiting courts from considering sentence disparities caused by "fast-track" programs which only some districts employ to provide lesser sentences to alien defendants who agree to quick guilty pleas and uncontested removals. Vega-Castillo, 540 F.3d at 1238-39. We explained that Kimbrough addressed a district court's discretion to vary from the Guidelines "based on a disagreement with Guideline, not Congressional, policy," and concluded:

> [T]he most that could possibly be argued is that Kimbrough overruled the following: prior precedents holding that a district court cannot vary from the advisory Guidelines based on a disagreement with a Guideline, even where Sentencing Commission policy judgment, not Congressional direction, underlies the Guideline at issue, and even where that policy judgment did not arise from the Commission's exercise of its characteristic institutional role.

Id. at 1239 (emphasis in original); see also United States v. Gomez-Herrera, 523 F.3d 554, 563 (5th Cir. 2008) ("[A]ny sentencing disparity resulting from fast track disposition programs is not unwarranted as the disparity was also intended by Congress . . . . [This] holding[] that a district court may not vary from the Guidelines on the basis of sentencing disparity intended by Congress w[as] not called into question by Rita or Kimbrough."). In other words, because the fast-track disparity was expressly driven by Congress, a district court may not consider its disagreement with this policy in making its sentencing decisions.

The same result is warranted here. As the district court aptly recognized, the Guideline at issue in Vazquez's sentence, U.S.S.G. § 4B1.1 -- which was the result of "direct congressional expression" -- is distinguishable from Kimbrough's crack cocaine Guidelines, which were the result of implied congressional policy. The district court therefore did not procedurally err when it declined to mitigate Vazquez's sentence due to its concern over the application of the career offender provision. Moreover, since the district court imposed a below-range sentence, it clearly understood its discretion to apply the Guidelines in an advisory manner.

Accordingly, we affirm Vazquez's sentence.

**AFFIRMED.**