IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110056-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 27, 2012) |
| Michael C. Martin, | ) | |
| | ) | 2012 UT App 208 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 041907590
The Honorable Deno G. Himonas

Attorneys:     Peter A. Daines and Joan C. Watt, Salt Lake City, for Appellant
               Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Roth.

ROTH, Judge:

¶1     Defendant Michael C. Martin entered a no contest plea to criminal mischief, *see* Utah Code Ann. § 76-6-106 (2008), which the district court held in abeyance, *see id.* §§ 76-2a-1 to -4. On appeal, Martin challenges the district court's determination that he violated the conditions of the plea in abeyance and the court's subsequent entry of his plea and imposition of sentence. *See id.* § 77-2a-4. We affirm.

¶2     This case arises out of a dispute between neighbors. The State charged Martin with two counts of criminal mischief, one second and one third degree felony, for removing a fence and landscaping features in his next door neighbor's (Neighbor) yard. *See generally* Utah Code Ann. § 76-6-106(2)(c), (3)(b)(i)-(ii) (providing that "[a] person

commits criminal mischief if the person . . . intentionally damages, defaces, or destroys the property of another," and further providing that criminal mischief is a "second degree felony if the actor's conduct causes . . . loss equal to or in excess of $5,000 in value" and is a "third degree felony if the actor's conduct causes . . . loss equal to or in excess of $1,000 but is less than $5,000 in value"). Specifically, Martin cut down a mature, fifty-foot elm tree and removed a chain link fence along with several California grape vines that had grown on the fence.[1]

¶3 In September 2005, Martin entered a no contest plea in abeyance to the third degree felony, and the State agreed to dismiss the second degree felony. Before accepting Martin's plea, the district court explained that it "w[ould] hold [Martin's] plea in abeyance . . . [until he] satisf[ied] certain conditions[, and i]f those conditions [we]re satisfied, the case w[ould] be dismissed . . . , [but i]f they [we]re not satisfied, then the [c]ourt w[ould] enter [a] guilty plea and [he] w[ould] be subject to punishment" consistent with a conviction for criminal mischief. *See generally* Utah Code Ann. § 77-2a-3(2)(b) ("[U]pon finding that the defendant has successfully completed the terms of a plea in abeyance agreement," "the court may" "allow withdrawal of defendant's plea and order the dismissal of the case."); *id.* § 77-2a-4(1) (providing that if the defendant violates or "fail[s] to substantially comply with any term or condition of the plea in abeyance agreement, [the court] may terminate the agreement and enter judgment of conviction and impose sentence against the defendant for the offense to which the original plea was entered"). A condition of the plea agreement was "that [Martin] replace the chain link fence and replant an elm tree that [he] removed, and replace the shrubs destroyed *and to have the work done by a licensed third party*." (Emphasis added.) At the plea hearing, the State explained that it was asking "that this repair [work] be done by a licensed third party because there is still some animosity" between Martin and Neighbor.

¶4 About a month after the plea hearing, Martin wrote a letter to the court in which he stated, "As I remember it, I was to hire a licensed contractor to do the work. This I have done, and the fence is in the exact location that it was previously." Around the same time, however, Neighbor also wrote to the court, complaining that Martin had not complied with the conditions of the plea agreement.

---

[1]Martin explained that he removed the fence, grape vines, and tree because "[he] believed [they] w[ere] impeding a right of way."

¶5     At a subsequent hearing, Martin explained that he had hired "a licensed [contractor] to do some of the work," but the contractor he had "set up . . . [was slow and] bailed on him in the last minute, so . . . [Martin] tried to . . . patch the fence" and "just did the work himself." In response, Neighbor asserted that not only had Martin installed the fence himself but he had also trespassed on her property to install the fence. She also complained that Martin had installed the same fence he had removed and that the posts were "loose," the fence was "crooked" and would not stand, and the gate could not open because it was "overlapped with wire."

¶6     The court took no action at that time but reminded Martin that, according to the terms of the plea agreement, "the work was to be done by a licensed third-party" and that "there was clearly an expectation that the replacement [of the fence] would be done in a workman-like fashion." The court also encouraged the parties to "try to address this issue privately and informally" to resolve the dispute. Nonetheless, the district court forbade Martin from entering Neighbor's property and issued a formal no contact order against him.

¶7     In July 2006, the State moved for an order to show cause, alleging that Martin had failed to comply with the terms of his plea agreement. An evidentiary hearing on the order to show cause was held in January 2007. At the hearing, Martin explained that he had replaced the fence with the assistance of an "electrician slash handyman," who he admitted was only licensed as an electrician but had "been involved in all sorts of handyman-type activities" for about twenty years. According to Martin, the electrician was there "[t]he majority of the time" and "did most of the work . . . as far as tying off . . . the fence and installing the electrical rod, which is required for grounding of a chain-link fence[ and] . . . requires an electrician to be involved" to make sure that the fence is clear of power lines. Martin explained that he "assisted [the electrician] with setting the post" because he had been "taking a class in construction . . . [on] concrete theory" and that task required "some expert assistance" from Martin to make sure that the fence was "reinforced so that it would be strong enough to hold this fence if there was any type of a severe shaking on the fence." Martin acknowledged that there "were no holes dug" to set the posts but he had "poured the concrete into the post to secure the design of the engineering that [he] felt was necessary to help secure those posts." Martin also admitted that he worked on installing the fence without the assistance or supervision of the electrician and stated that the electrician "assisted in finishing up the fence."

¶8  According to Neighbor, however, the work Martin had done to replace the fence was "not acceptable." Neighbor acknowledged that Martin had replaced and reinforced the fence, but it was nonetheless "crooked" and "wobbly." Further, there was a gap in the fence that was large enough for animals to get through, and the gate would not close. Neighbor also explained that she had consulted a surveyor who had told her that the fence was not on her property line.

¶9  The district court concluded that Martin had failed to comply with the conditions required for successful completion of the plea in abeyance and entered Martin's plea. The court admonished Martin for "violat[ing] the spirit of the [plea] agreement" but specified that its decision to revoke the plea in abeyance was made "solely" on the basis that Martin did "not hav[e] all [the] work done by a licensed third party" as he had done some of the work himself.[2] At sentencing, the court reduced the third degree felony to a class A misdemeanor and imposed a year in jail and a $2500 fine, which it suspended. The court also imposed twelve months of probation and ordered Martin to complete community service and pay "full and complete restitution" to Neighbor in the amount of $8650.

¶10  On appeal, Martin argues that the district court abused its discretion when it revoked his plea in abeyance and entered his guilty plea. *See* Utah Code Ann. § 77-2a-4(1) (2008) (providing that the court "*may* terminate the [plea in abeyance] agreement" upon finding that the defendant violated or failed to substantially comply with the terms of the agreement (emphasis added)); *see also, e.g., State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994) ("The decision to grant, modify, or revoke probation is in the discretion of the trial court." (internal quotation marks omitted)). Specifically, Martin argues that the plea in abeyance condition that required Neighbor's fence to be replaced

---

[2]The State argued that Martin had also failed to fulfill the plea agreement conditions that he "replant [the] elm tree that [he] removed, and replace the shrubs destroyed." The State presented evidence that Martin had replaced the mature, fifty-foot elm tree he had removed with a $29.97 maple sapling. There was also evidence that although the grape vines eventually grew back, they no longer produced fruit. The district court concluded that while Martin had violated the "spirit" of the plea in abeyance, the conditions relating to the tree and the grape vines were too ambiguous to support a conclusion that Martin had violated them.

by a licensed third party was ambiguous. In the alternative, Martin argues that he substantially complied with the condition.

¶11   Martin first contends that the plea agreement is ambiguous. *See generally* Utah Code Ann. § 77-2a-2(4)(a) ("Any plea in abeyance agreement entered into between the prosecution and the defendant and approved by the court shall include a full, detailed recitation of the requirements and conditions agreed to by the defendant and the reason for requesting the court to hold the plea in abeyance."); *see also State v. Patience*, 944 P.2d 381, 387 (Utah Ct. App. 1997) (explaining that "[p]rinciples of contract law provide a useful analytic framework in cases involving plea agreements" but cautioning "that there are limits to the contract analogy," so "contract principles [should not] be blindly incorporated" (first alteration in original) (internal quotation marks omitted)). Martin argues that in requiring him to "have the work done by a licensed third party," the plea agreement is ambiguous in that it does not explicitly prohibit him from assisting the licensed third party with the work. Martin contends that if the district court "intended to prevent [him] from assisting the third party in the work, the . . . court was required to include that condition expressly in the agreement." Martin thus asserts that the plea agreement's silence on whether he could assist the third party in doing the work makes the agreement ambiguous on that point. And, according to Martin, because the plea agreement is ambiguous, the district court was required to construe the ambiguity in his favor. *See Patience*, 944 P.2d at 387 ("[I]n interpreting plea agreements or determining their validity, courts may in certain circumstances hold the government to a higher standard than the defendant."); *see also United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) ("[A] plea agreement that is ambiguous must be read against the [State]." (internal quotation marks omitted)). Martin asks us to conclude that the district court "abused its discretion when it . . . imported language into the agreement against [him]" to find a violation of the plea agreement.

¶12   In the context of this case, the condition that Martin "have the work done by a licensed third party" was meant, in part, to prevent any further animosity and conflict between Martin and Neighbor. *See generally Jefferies*, 908 F.2d at 1523 (explaining that the plea agreement "should be viewed against the background of the negotiations and should not be interpreted to directly contradict an oral understanding" (internal quotation marks omitted)). This purpose is clear it light of the State's explanation for the condition that was given at the plea hearing, that is, that there was ongoing animosity between Neighbor and Martin. In other words, the purpose of the condition

was to make sure that someone not involved in this dispute did the restoration work, *not* Martin. Under the circumstances, it is simply unreasonable to interpret the absence of an affirmative prohibition as allowing the very thing that the court intended to prevent.

¶13    Further, even looking to the plain language of the plea agreement in isolation, the requirement that Martin "have the work done by a licensed third party" is clear. *See id.* (explaining that in interpreting a plea agreement, the court should not engage in "a hyper-technical reading of the written agreement and a rigidly literal approach in the construction of language should not be accepted" (internal quotation marks omitted)). Certainly, the condition could have read that Martin "have *all* the work done by a licensed third party" or that Martin "have the work done by *only* a licensed third party" or even that "the work is to be done by a licensed third party, without any participation by Martin." But this added language does not substantively change the meaning of the condition as it is. Rather, such additional language only serves to make more clear what is already clear in the language itself: that Martin "have the work done by a licensed third party." This phrase clearly does not include the participation of the unlicensed, directly-involved Martin. The requirement that the work be done by a licensed third party requires a third party to do the work and, in so requiring, excludes the possibility of Martin's participation in the work. Accordingly, we conclude that the requirement that Martin "have the work done by a licensed third party" is not ambiguous because, by its plain language and in the context of the proceedings, it clearly excludes the possibility that Martin do the work himself or take any part in the work.

¶14    In the alternative, Martin argues that he "substantially complied with the terms of the [plea] agreement" because he "made bona fide efforts to satisfy the [requirement that he] . . . replac[e] the chain-link fence." *See generally* Utah Code Ann. § 77-2a-4(1) (explaining that if the district "court finds that the defendant has failed to substantially comply with any . . . condition of the plea in abeyance agreement, [the court] may terminate the agreement"). According to Martin, although he assisted the electrician in installing the fence and sometimes worked on the fence himself without supervision, the work to install the fence was nonetheless mostly "done by a licensed third party" and the fence was ultimately installed as required. Martin thus asserts that he made a "good faith attempt to comply" with the conditions of the plea agreement and that he "accomplished the essential purpose of the agreement by [installing] the fence."

¶15    Martin's argument is premised on the notion that the purpose of this condition was simply to have a fence installed on Neighbor's property.  This condition, however, served two additional purposes.  First, as we have discussed, having the work done by a disinterested third party was meant to prevent any further conflict and animosity between Martin and Neighbor.  Second, having the work done by a licensed party was meant to ensure that the fence would be installed with quality workmanship.  Martin's conduct in installing the fence does not substantially comply with either of these purposes.  Although Martin installed a fence on Neighbor's property, the condition and quality of the fence was "not acceptable."  Further, Martin's participation in installing the fence only exacerbated the existing animosity between him and Neighbor.  Martin's argument that he made a good faith attempt to comply with this condition of the plea agreement is not supported by the facts or any reasonable interpretation of the condition.  We therefore conclude that Martin failed to substantially comply with this condition of the plea agreement.

¶16    Because the plea agreement is not ambiguous and Martin did not substantially comply with the plea agreement, we conclude that the district court acted within its discretion in revoking Martin's plea in abeyance.  Accordingly, we affirm.


_____
Stephen L. Roth, Judge


-----


¶17    WE CONCUR:


_____
Gregory K. Orme, Judge


_____
James Z. Davis, Judge