In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3799

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS L. WELTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08 CR 39—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JUNE 1, 2009—DECIDED OCTOBER 2, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
EVANS, *Circuit Judges*.

BAUER, *Circuit Judge.* After pleading guilty to distribut-
ing crack cocaine, Marcus L. Welton was sentenced as
a career offender to 188 months' imprisonment. On
appeal, Welton contends that resentencing is necessary
in light of the Supreme Court's decision in *Kimbrough v.
United States*, 128 S. Ct. 558, 564 (2007), which recognized
a district court's authority to consider the sentencing

disparity between crack and powder cocaine offenses in fashioning a sentence. We affirm.

## I. BACKGROUND

On two separate occasions in the Summer of 2007, Welton sold crack cocaine totaling approximately 41 grams to an undercover agent with the Madison, Wisconsin Police Department. Welton pleaded guilty to a single count of distributing more than five grams of cocaine in violation of 21 U.S.C. § 841(a)(1).

Under the Sentencing Guidelines, Welton qualified as a career offender based on two prior felony drug convictions. *See* U.S.S.G. § 4B1.1(a). After a three-level reduction for acceptance of responsibility, Welton's total offense level was 31, which, when paired with a criminal history of VI, yielded an advisory Guidelines range of 188-235 months.

At his sentencing hearing, Welton requested a below-Guidelines sentence based on the crack/powder cocaine disparity. Welton acknowledged that he met the technical definition of a career offender, but argued that the designation and resulting range were too severe in his case.

The district court dismissed Welton's argument based on the severity of the crack/powder disparity. The court also rejected Welton's claim that he was unfairly subject to career offender penalties; the court noted Welton's extensive criminal history, including two prior drug trafficking convictions and numerous misde-

meanor convictions that resulted in a criminal history category of VI. The court also noted that the Guidelines were advisory and that it would consider the factors in 18 U.S.C. § 3553(a) when sentencing Welton. Ultimately, the court found that a term of imprisonment of 188 months was reasonable and no greater than necessary to hold him accountable, protect the community, provide opportunity for rehabilitative programs, and achieve parity with the sentences of similarly situated offenders. Welton filed a timely appeal.

## II. DISCUSSION

Welton argues that the district court should have considered the Guidelines' crack/powder disparity as a basis for imposing a below-Guidelines sentence even though he was sentenced as a career offender. He argues that the Supreme Court's decision in *Kimbrough*, which held that the disparity between crack and powder cocaine is advisory and therefore within a district court's discretion to consider, should apply equally to a defendant who is sentenced as a career offender. *See Kimbrough*, 128 S. Ct. at 564.

We review sentences for reasonableness in light of the statutory factors provided by 18 U.S.C. § 3553(a). *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *United States v. Padilla*, 520 F.3d 766, 771 (7th Cir. 2008). We presume that a sentence within a correctly calculated Guidelines range is reasonable. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 727 (7th Cir. 2008). In considering what would be a reasonable sentence, the district court must give

meaningful consideration to nonfrivolous sentencing arguments. *United States v. Cunningham,* 429 F.3d 673, 679 (7th Cir. 2005).

As Welton notes, a district court may weigh the Guidelines' disparate treatment of crack and powder cocaine as part of its consideration of § 3553(a)(6), the need to avoid sentencing disparities. *Kimbrough*, 128 S. Ct. at 564. *Kimbrough* explained that a district court may generally consider policy disagreements with the advisory Guidelines, provided that the Court does not disregard statutes such as mandatory minimums and maximums. *See id*. at 570-71. Since the Guidelines' crack/powder disparity does not result from a Congressional mandate, *see id*. at 571-72, a district court may determine that a within-Guideline sentence is greater than necessary to serve the objectives of sentencing. *See id*. at 575.

Here, Welton contends that *Kimbrough*'s holding should be extended to include defendants sentenced as career offenders. But applying the reasoning above, Welton's argument must fail. Unlike the crack/powder disparity, the career offender Guideline range *is* the product of a Congressional mandate. As *Kimbrough* noted, Congress "specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders 'at or near' the statutory maximum." *Id.* at 571 (citing 28 U.S.C. § 994(h)). Deviating from the career offender Guideline range based on a policy disagreement necessitates that a sentencing court disregard those statutory maximums. This asks more of a sentencing court than it can deliver because, "while

the Sentencing Guidelines may be only advisory for district judges, congressional legislation is not." *United States v. Harris*, 536 F.3d 798, 813 (7th Cir. 2008).

We have been down this road before. In *Harris*, we held that *Kimbrough* has no effect on a sentence entered under the career offender Guideline, § 4B.1.1. *Harris*, 536 F.3d at 813; *see also United States v. Millbrook*, 553 F.3d 1057, 1067 (7th Cir. 2009) ("*Kimbrough*'s discussion of a district court's discretion to take into account the crack/powder disparity is of no consequence to a defendant sentenced under § 4B.1.1 as a career offender."); *United States v. Clanton*, 538 F.3d 652, 660 (7th Cir. 2008) ("[A] sentence entered under the career offender Guideline, § 4B.1.1, raises no *Kimbrough* problem. . . ." (quoting *Harris*, 536 F.3d at 813)). It is true that defendants sentenced as career offenders are affected by a policy of harsher sentences for crack offenses because the statutory maximums referenced by § 4B.1.1(b) retain a 100:1 crack/powder disparity. *See* 21 U.S.C. § 841(b)(1)(a)(ii)-(iii) (imposing a maximum sentence of life imprisonment for drug offenses involving both 50 grams of crack and 5 kilograms of powder cocaine). But as we stressed in *Harris*, the statutory origin of the disparity embedded in § 4B.1.1 removes that disparity from the sentencing discretion provided by *Kimbrough*. *Harris,* 536 F.3d at 813.

Our focus on the statutory origin of the crack/powder disparity embedded in § 4B.1.1 is consistent with other circuits' views that *Kimbrough* provides no basis for career offenders to challenge their Guidelines sentence.

*See United States v. Jimenez*, 512 F.3d 1, 8 (1st Cir. 2007) (noting that *Kimbrough* did not benefit a defendant sentenced as a career offender); *United States v. Vazquez*, 558 F.3d 1224, 1228 (11th Cir. 2009) (declining to read *Kimbrough* "to suggest that district courts may base their sentencing decisions on any disagreement they may have with the policy behind the career offender Guidelines, which are directly driven by Congressional pronouncement"); *cf. United States v. Sanchez*, 517 F.3d 651, 664-65 (2d Cir. 2008) (observing that while 28 U.S.C. § 994(h) does not require a district court to sentence a career offender "at or near the statutory maximum," the court is not "free to ignore the Congressional policy reflected in that section").

In his brief, Welton urges us to resolve what he considers to be an "intra-circuit split" on this issue, arguing that our decision in *Harris* is in conflict with *United States v. Hearn*, 534 F.3d 706 (7th Cir. 2008). Welton correctly notes that in *Hearn*, we remanded Hearn's case for reconsideration in light of *Kimbrough,* notwithstanding the fact that Hearn had been sentenced as a career offender. *Hearn*, 534 F.3d at 714-15. But Welton fails to place *Hearn* in its proper context. Before *Kimbrough*, our circuit precedent prevented district courts from considering the crack/powder disparity as a basis for choosing a below-Guidelines sentence. *See United States v. Miller*, 450 F.3d 270, 274-75 (7th Cir. 2006). After *Kimbrough*, we established remand procedures for crack offenders who, like Hearn, were sentenced prior to *Kimbrough*. In cases in which the crack/powder disparity challenge had been preserved, we granted a full remand.

*See United States v. Taylor*, 520 F.3d 746, 747-48 (7th Cir. 2008). In cases where the challenge had not been preserved adequately, we permitted a limited remand in order to allow the district court to indicate whether it would have selected a different sentence had it known of its discretion. *Id*. It is true that our decision in *Hearn* assumed, without deciding, that *Kimbrough* applied to defendants sentenced as career offenders. *Hearn*, 534 F.3d at 714-15. However, *Hearn* pre-dated *Harris*, in which we explicitly found that *Kimbrough* does not apply to defendants sentenced under the career offender Guideline. Moreover, in light of our decision in *Harris*, we granted the government's petition for rehearing in *Hearn* and held that a remand was not required despite the sentencing disparity for crack cocaine. *United States v. Hearn*, 549 F.3d 680, 684 (7th Cir. 2008).

Yet, while *Hearn* does nothing to undercut our holding in *Harris*, we are aware that one of our recent decisions may appear to do so. In *United States v. Liddell*, 543 F.3d 877, 880-82 (7th Cir. 2008), Liddell advanced a similar argument on appeal as Welton does here: that the district court should have considered the severity of the crack/powder disparity even though he was sentenced as a career offender. Citing *Harris*, the court first noted that Liddell's argument was problematic because the only crack/powder disparity that affected his sentence under § 4B.1.1 was the product of a statute. *Id*. at 882-83. Nonetheless, the court then recognized what it called the defendant's "more nuanced" argument of whether a district court "can consider the disparity as a reason for issuing a below-guideline sentence." *Id*. at 883. This

contention was ultimately rejected because Liddell did not raise it below, and any error by the district court in failing to consider his *Kimbrough* challenge was not plain. *Id*. at 883, 885.[1]

The discussion in *Liddell* of a career offender's *Kimbrough* argument is admittedly inconsistent with our holding in *Harris*, causing confusion as to whether a district court may consider the crack/powder disparity as a basis for imposing a sentence outside the career offender Guidelines range. Upon further consideration, we conclude that *Liddell*'s rationale is irreconcilable with *Harris* and unsupported by other authority on the scope of the sentencing discretion provided by *Kimbrough*.

In *Liddell*, the court under-read *Harris* as merely reaffirming that *Kimbrough* "did not change the way court's calculate career offender guideline ranges." 543 F.3d at 883. This reading overlooks *Harris*' emphatic point that *Kimbrough* does not authorize a district court to disagree with the statutory authority embedded in § 4B.1.1. *Harris* addressed not whether *Kimbrough* affects how a district court calculates a sentencing range under § 4B.1.1, but whether, given a properly calculated range, *Kimbrough* allows consideration of the disparity as a mitigating sentencing factor. *See Harris*, 536 F.3d at 813. In fact,

---

[1] Because our decision overrules *Liddell*, we have circulated it to the full court as required by our Circuit Rule 40(e). Judge Rovner, Judge Wood and Judge Williams voted to hear the case *en banc* and their dissent follows. The remaining judges in regular active service voted not to hear the case *en banc*.

there was no real doubt in *Harris* as to whether a district court could alter its Guidelines calculation based on the disparity, *see id*. at 806 (noting that the defendant did not object to the calculations of his sentencing range under § 4B.1.1), since the first step in any sentencing decision is "correctly calculating the applicable Guidelines range," *Gall*, 128 S. Ct. at 596. By indicating that a crack career offender Guidelines sentence "raises no *Kimbrough* problem," *Harris*, 536 F.3d at 813, we closed the door on any hope of a crack/powder disparity policy disagreement affecting such a sentence.

We also think that *Liddell*'s observation that 28 U.S.C. § 994(h) does not require the imposition of a sentence at or near the applicable statutory maximum, 543 F.3d at 883-84, ignores the fact that this statute nonetheless reflects a Congressional policy with which a sentencing court may not disagree. Indeed, the Supreme Court in *Kimbrough* cited § 994(h) as an example of an instance where Congress has expressly incorporated a sentencing policy into the Guidelines. *Kimbrough*, 128 S. Ct. at 571; *see also Vazquez*, 558 F.3d at 1228 ("[T]he Supreme Court expressly made a distinction between the Guidelines' disparate treatment of crack and powder cocaine offenses—where Congress did not direct the Sentencing Commission to create the disparity—the Guidelines' punishment of career offenders—which was explicitly directed by Congress.").

Moreover, the cases from other circuits mentioned in *Liddell*, *see* 543 F.3d at 884, provide no support for the concept that a court can do indirectly what a Congressional

enactment has precluded them from doing directly. While *United States v. Martin*, 520 F.3d 87, 96 (1st Cir. 2008), and *United States v. Sanchez*, 517 F.3d 651, 663 (2d Cir. 2008), stand for the proposition that a sentencing court is not required to sentence a crack career offender within the § 4B.1.1 range, neither case holds, nor even suggests, that a court can consider the crack/powder disparity in choosing a sentence outside a properly calculated range.

Because the discussion in *Liddell* relied on a misunderstanding of our prior precedent in *Harris* and did not adequately recognize that the career offender crack/powder disparity is the result of a legislative act, we do not believe that *Liddell*'s suggestion that career offenders may challenge their Guidelines sentence based on the disparity is entitled to precedential value. To the extent that *Liddell* is inconsistent with *Harris*' holding that a district court may not rely on the 100:1 crack/powder disparity embedded in § 4B.1.1 as a basis for imposing a non-Guidelines sentence, we disavow that portion of our decision in that case.

To be clear, the fact that a district court may not disagree specifically with the statutory disparity embedded in § 4B.1.1 does not mean that the court may only impose a sentence that is within the career offender Guidelines range. As we cautioned in *Harris*, our analysis "should not be read to suggest that § 4B.1.1 is any less advisory for a district judge than the other sentencing guidelines*." Harris*, 536 F.3d at 813; *see also Liddell*, 543 F.3d at 883-84 (observing that no Congressional statute makes § 4B.1.1 mandatory for sentencing courts, and that

the Supreme Court has consistently reaffirmed the advisory nature of the Sentencing Guidelines); *Martin*, 520 F.3d at 96 (upholding a career offender's below-Guidelines sentence as a permissible deviation from the Guidelines' policy of punishing recidivism); *Sanchez*, 517 F.3d at 663 (concluding that "there is no statutory provision instructing the court to sentence a career offender at or near the statutory maximum" in accordance with § 4B.1.1). District courts retain discretion to give career offenders a non-Guidelines sentence based on their consideration of the factors enumerated in § 3553(a). *See Millbrook*, 553 F.3d at 1067.

Welton received a sentence within an appropriately calculated career offender Guidelines range. *Kimbrough*, which addressed the crack/powder disparity embedded in § 2D1.1, has no effect on Welton's sentence. Since career offenders have no sentencing challenge based on the severity of the crack/powder disparity, we find that Welton is not entitled to resentencing in light of *Kimbrough*.

## III.  CONCLUSION

For the reasons set forth above, we AFFIRM the judgment and sentence of the district court.

EVANS, *Circuit Judge*, concurring. As Judge Bauer's persuasive opinion makes perfectly clear, *Liddell* and *Harris* can no longer (if they ever could) live comfortably together. One, or the other, has to move out. And, given the impressive array of authority marshaled in today's opinion, that somebody has to be *Liddell*. But for the reasons noted in *Liddell*, Congress should take a look at this issue because the ugly hand of the 100-to-1 discriminatory crack-to-powder-cocaine ratio is still at work in cases like this.

WILLIAMS, *Circuit Judge*, with whom ROVNER and WOOD, *Circuit Judges*, join, dissenting. The Supreme Court has held unequivocally that all guidelines are advisory and that courts may issue below-guideline sentences based on policy disagreements with the crack/powder disparity. Nonetheless, the panel believes there are some exceptions to these rules. Because the panel opinion imposes impermissible limits on a judge's discretion in applying the Sentencing Guidelines, I believe it is out of step with the Supreme Court's decisions in *Booker* and *Kimbrough*.

**I.**

Several years ago, this court adopted the position that a judge could not consider the crack/powder disparity when making sentencing decisions. Our justification at

the time was that the 100-to-1 ratio appeared in the drug offense guideline by legislative decision, and that the court was not free to disagree with Congressional policy. *See United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006). *Kimbrough* rejected this line of reasoning and held that a judge could consider the crack/powder disparity to determine whether a sentence was greater than necessary to achieve § 3553(a)'s purposes. *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007). But with this opinion, the court has essentially repackaged its arguments in *Miller* and applied it to the career offender guidelines, maintaining, once again, that a district court cannot take the crack/powder disparity into account.

To reconcile this decision with Supreme Court precedent, the panel attempts to distinguish the drug offense guideline, § 2D1.1, from the career offender guideline, § 4B1.1, and exempt the latter from *Kimbrough*'s broad pronouncement. For one, the panel relies on the fact that the disparity in § 2D1.1 does not result from a Congressional mandate, while the disparity in § 4B1.1 does. But this reads too much into the statute. The Congressional directive in 28 U.S.C. § 994(h) directs the *Sentencing Commission* to promulgate a guideline that specifies sentences for career offenders "at or near the maximum term authorized" in the statute. We explained in *Liddell* that nothing in § 994(h) tells a court how to sentence a career offender, or requires it to adhere to the crack/powder disparity. As the panel notes, *Kimbrough* cites § 994(h) as an example of an express directive to the Sentencing Commission, but this does not mean that sentencing courts are similarly bound. 128 S. Ct. at 571 ("[C]ongress has specifically required the Sentencing

Commission to set Guideline sentences for serious recidivists 'at or near' the statutory maximum. 28 U.S.C. § 994(h).”). At most, § 994(h) requires that those sentences be the starting point for a district court assessing the appropriate term of imprisonment. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007) (“[T]he guidelines should be the starting point and the initial benchmark.”). I do not believe Congress limits the courts' discretion through directives to the Sentencing Commission.

This does not “ignore” the argument that “[§ 994(h)] . . . reflects a Congressional policy” that binds sentencing courts, Op. at 9; it simply disagrees. The panel opinion assures us that § 4B1.1 is no less advisory than other guidelines, Op. at 10-11, but also maintains that a sentencing court cannot deviate from the career offender guideline for policy reasons. Op. at 4. I cannot reconcile these two positions. Section 994(h) is a comprehensive statute. It guides the formation of the guideline sentence and the category of defendants to whom it applies, stating specifically:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> (1) has been convicted of a felony that is—
>
> (A) a crime of violence; or
>
> (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import

and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and

(2) has previously been convicted of two or more prior felonies, each of which is—

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

28 U.S.C. § 994(h). The panel cannot have it both ways. If courts cannot base sentencing decisions on disagreements with the 100-to-1 ratio—which is implicit in the maximum terms referenced by § 994(h)—then, following the panel's logic, disagreements with the severity of the sentences "at or near the maximum term" should also be off limits. So which part of the career offender guideline remains advisory? The panel recognizes that a sentencing judge may still exercise his discretion to issue a below-guideline sentence. Op. at 10-11. But, to me, this simply reinforces that judges may take into account their disagreement with the disproportionate sentences proposed for crack cocaine defendants. To hold otherwise would be inconsistent with the requirement that § 4B1.1 remain completely advisory.

If, for instance, a court were to consider a defendant's history or the nature of his crime (factors permitted under 18 U.S.C. § 3553(a)(1)) in issuing a below-guideline sentence, would that determination amount to an unauthorized policy disagreement with the direc-

tive? Section 994(h) clearly specifies that defendants convicted of certain crimes (who meet other criteria) should be subject to a guideline range at or near the statutory maximum penalty, and a court that deviates from this range is essentially saying that the guideline sentence is too high. But surely the panel would not find this application of § 3553(a) objectionable. Alternatively, if a court wanted to rely on § 3553(a)(6) and issue a below-guideline sentence to avoid any "unwarranted sentencing disparities" between individual defendants, is it prohibited from doing so whenever the disparity originates from § 994(h)'s directive?

The problem with the panel's reasoning is that it can be applied to prohibit *any* determination, individualized or otherwise, that a career offender's guideline sentence is excessive—notwithstanding the fact that a sentencing court's discretion to reach this conclusion is the prominent feature of an *advisory* rather than mandatory guideline. *Booker* requires that § 4B1.1 be no less advisory than other guidelines. *See United States v. Booker*, 543 U.S. 220, 266-67 (2005). And the panel's holding cannot be reconciled with this principle, not when it circumscribes the discretion sentencing courts have normally exercised.

Indeed, I recognize that the impetus behind the panel's interpretation of § 994(h) is the fear of rejecting Congressional policy, but this court has once again taken this principle too far. When Congress wanted to prescribe the factors courts should consider in making sentencing decisions, it enacted 18 U.S.C. § 3553(a), which states, in part: "[t]he *court* in determining the particular

sentence to be imposed, shall consider . . . ." (emphasis added). Similarly, when Congress wanted to make certain portions of the Commission's policy statements binding on courts, it said so explicitly in 18 U.S.C. § 3582(c)(2) (prescribing conditions for modification of an imposed term of imprisonment). That statute states that for eligible defendants, "*the court* may reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See also* 18 U.S.C. § 3553(b) (2003) ("[T]he court shall impose a sentence of the kind, and within the range, referred to in subsection(a)(4) . . . .") *abrogated by United States v. Booker*, 543 U.S. 220 (2005); 21 U.S.C. § 841 (setting mandatory maximum and minimum sentences for certain offenses). Congress has, and continues, to limit the courts' sentencing discretion. In these instances, Congress speaks *to the court* and speaks clearly. It did not do so in § 994(h).

Instead, § 994(h) spoke to the Sentencing Commission, and the Commission adopted the same approach in formulating guideline ranges in drug cases for both regular and career offenders. In fact, the Commission looked to 21 U.S.C. § 841(b)(1) when it created the drug offense guideline—the same statute on which the career offender guideline ranges for drug offenders rely. *Kimbrough*, 128 S. Ct. at 567, 575 ("In formulating Guidelines ranges for crack cocaine offenses . . . the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of 'empirical data and national experience.'") (citing *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007)); *see also* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.10 (2005) ("The Com-

mission has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences."). Even so, the Supreme Court held that a sentencing judge had the discretion to depart from the drug offense guideline based on a policy disagreement with the then-existing 100-to-1 ratio. *See Kimbrough*, 128 S. Ct. at 575-76. The disparity between the crack and powder cocaine advisory ranges in *both* §§ 2D1.1 and 4B1.1 originates from the same statute, and I see no functional difference between the two guidelines.

The panel opinion cannot be reconciled with the Supreme Court's emphasis on the discretion afforded to district courts when making sentencing decisions. On the contrary, it has thrust upon the courts yet another sentencing quagmire: a guideline that is supposed to be, but is not completely, advisory. It did so despite clear pronouncements in *Booker* and *Kimbrough* that all guidelines are advisory. For the reasons stated in those cases, I cannot agree with this outcome.

## II.

It is clear that the issues raised in this case implicate significant questions of law that have divided judges both within our circuit and around the country. Contrary to the panel's assertion, the only thing a survey of our sister circuits makes clear is that the relationship between § 994(h) and the career offender guideline is unsettled. The Sixth Circuit, for instance, addressed this same issue in *United States v. Michael*, 576 F.3d 323

(6th Cir. 2009). There, the court held that a sentencing judge *can* disagree with the crack/powder disparity incorporated in § 4B1.1, just as it may disagree with the disparity in § 2D1.1(c), and *can* take this disagreement into account when sentencing career offenders. *Id*. at 327-28. Its discussion rejected many of the same arguments the panel makes today. Indeed, the First and Eleventh Circuits have concluded that *Kimbrough* provides no relief to defendants sentenced under § 4B1.1, *see United States v. Jimenez*, 512 F.3d 1, 9 (1st Cir. 2007); *United States v. Vazquez*, 558 F.3d 1224, 1228-29 (11th Cir. 2009), but the Sixth and Eighth Circuits have stated that sentencing courts are authorized to consider the crack/powder disparity when sentencing career offenders. *Michael,* 576 F.3d at 328; *United States v. Clay*, 524 F.3d 877, 878 (8th Cir. 2008); *see also United States v. Cole*, No. 07-5563, slip op. at 6 (6th Cir. Aug. 21, 2009) (disagreeing with the Seventh Circuit's reasoning in *Harris*).

Even among federal prosecutors, the panel's position finds opposition. Notably, the government's brief in this case expressly acknowledged that "[d]istrict courts are free to consider the crack cocaine versus powder cocaine disparity when sentencing defendants who are career offenders." Brief of the United States at 14-15, United States v. Welton, No. 08-3799 (7th Cir. May 13, 2009). It simply argued that the district court did not err when it chose not to do so. Similarly, in *United States v. Funk*, the Department of Justice and the local United States Attorney conceded, in their response to the defendant's petition for rehearing, that sentencing courts have the discretion to issue a below-guideline sentence based on

a policy disagreement with the career offender guide-line, despite the directive in § 994(h).[2]

While the law is in dispute, the effect of the career offender guideline on crack cocaine defendants is clear. And a district court would certainly be justified in finding that the guideline range results in a term of imprisonment that is greater than necessary for § 3553(a)'s purposes. Support for this position is well documented. The Sentencing Commission's own reports had long questioned the propriety of the 100-to-1 ratio that is still

---

[2] The Sixth Circuit had originally held that a district court's failure to include a defendant's prior marijuana conviction in determining whether he was a career offender amounted to an unlawful rejection of Congressional policy. *See United States v. Funk*, 534 F.3d 522 (6th Cir. 2008). However, the court later granted rehearing en banc and vacated the opinion following the government's concessions. In particular, the government stated:

> Congress's direction to the Commission in Section 994(h) does not, however, preclude sentencing courts from varying based on policy disagreements with the career offender guideline . . . . Thus, as with other guidelines, courts may vary from the range recommended by the career offender guideline based on policy considerations, including "disagreements" with the guideline.

Corrected Response of the United States to Defendant's Petition for Rehearing En Banc at 8-9, United States v. Funk, No. 05-3708 (6th Cir. Oct. 9, 2008); *see also* Supplemental Brief for the United States at 13, United States v. Funk, No. 05-3708 (6th Cir. Jan. 15, 2009).

reflected in the statutory maximum terms, and also in the career offender guideline. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing 132-34 (2004), http://www.ussc.gov/ 15_year/chap4.pdf. The Commission has acknowledged that when the 100-to-1 ratio was implemented, the majority of crack cocaine defendants who received sentences greater than five years were low-level street dealers, and for no other drug are low-level dealers subject to such harsh sentences. *Id*. It also reports that the recidivism rates for defendants sentenced under the career offender guidelines based on prior drug trafficking convictions are much lower than those of other offenders who receive a criminal history category of VI or offenders with one or more violent offenses. *Id*. at 134. As a result, the Commission concluded that under the career offender guideline, a defendant's criminal history category is a "*less* perfect measure of recidivism risk" when applied to defendants who qualify solely because of prior drug trafficking charges. *Id*. (emphasis added). These are all factors that may affect a district court's analysis under § 3553(a), the consideration of which this court has now foreclosed.

The Supreme Court has made clear that sentencing judges retain wide discretion after they satisfy their initial obligation to calculate the advisory guideline range. *Gall*, 128 S. Ct. at 596. *Kimbrough* held that this discretion extended to policy disagreements with the crack/powder disparity, and the Supreme Court soundly reaffirmed this principle in *Spears v. United States*, 129 S. Ct. 840 (2009). To me, the panel's approach

is inconsistent with *Booker* and *Kimbrough*. I share Judge Evans's hope that Congress takes a close look at this issue. In the interim, in light of the lengthy sentences at stake, hopefully the Supreme Court will resolve this circuit split.