In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1033

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

VINCENT CORNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:07-cr-00104-bbc-1—**Barbara B. Crabb**, *Chief Judge*.

ARGUED SEPTEMBER 12, 2008—DECIDED DECEMBER 17, 2009

Before RIPPLE, ROVNER and EVANS, *Circuit Judges*.

RIPPLE, *Circuit Judge*. On October 2, 2007, Vincent Corner pleaded guilty to possessing with intent to distribute five grams or more of cocaine base. The district court sentenced him to 188 months' imprisonment. Mr. Corner now challenges the district court's decision to classify him as a career offender under section 4B1.1 of the United States Sentencing Guidelines and maintains that his sentence is unreasonable in light of *Kimbrough v. United States*, 552 U.S. 85 (2007). For the reasons set forth in this opinion, we affirm the judgment of the district court.

**I**

**BACKGROUND**

On May 31, 2007, the Madison, Wisconsin Police Department and the Dane County Narcotics and Gang Task Force conducted surveillance at a Red Roof Inn in Madison. The police had information that Mr. Corner and his girlfriend, who were wanted for state probation violations, were staying at the motel. When Mr. Corner and a woman left the motel in a car, the police stopped their vehicle. The police arrested Mr. Corner, searched him and found over $2,600 in cash and a bag containing 11.31 grams of cocaine base.

A grand jury in the Western District of Wisconsin issued a one-count indictment on June 27, 2007, charging Mr. Corner with possessing with intent to distribute five grams or more of cocaine base. Mr. Corner pleaded guilty on October 2, 2008. The United States Probation Office filed a presentence investigation report, which recommended that Mr. Corner be sentenced as a career offender and calculated Mr. Corner's total offense level to be 31 and his advisory guidelines range to be 188 to 235 months' imprisonment.

At the sentencing hearing, the district court calculated Mr. Corner's base offense level at 24 because the offense involved more than five grams, but less than twenty grams, of cocaine base. *See* U.S.S.G. § 2D1.1(c)(8).[1] The district court found, however, that, based on his

---

[1] Mr. Corner was sentenced under the November 2007 United States Sentencing Commission Guidelines Manual.

prior convictions for maintaining a drug trafficking place and for criminal trespass to a dwelling, Mr. Corner was a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.[2] Consequently, he received a criminal history category of VI and an adjusted offense level of 34.[3] The court decreased his offense level by three points for his acceptance of responsibility, which yielded a total offense level of 31. The district court sentenced Mr. Corner to 188 months' imprisonment, which was at the bottom of the Guidelines range.

During the hearing, Mr. Corner invited the district court's attention to *Kimbrough*, which had been decided two weeks earlier; he noted the disparity between the Guidelines' treatment of crack and powder cocaine offenses. Mr. Corner submitted that, in light of this disparity, he should receive a lower sentence. The district court, however, did not address this argument. Mr. Corner subsequently filed this appeal.

---

[2] To be convicted as a career offender, the defendant must have at least two prior felony convictions for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.

[3] Under U.S.S.G. § 4B1.1(b), a career offender's offense level is calculated based on the statutory maximum that the offense carries. The court then employs this offense level if it is greater than the offense level otherwise applicable. In this case, Mr. Corner's possession of 11.31 grams of crack cocaine carried a maximum sentence of forty years under 21 U.S.C. § 841(b)(1)(B)(iii), yielding a career offender offense level of 34 under section 4B1.1(b)(B).

## II

## DISCUSSION

Mr. Corner challenges his classification as a career offender and the length of his sentence based on the crack/powder disparity addressed in *Kimbrough*. We review de novo whether the district court erred in sentencing Mr. Corner as a career offender. *See United States v. Kindle*, 453 F.3d 438, 440 (7th Cir. 2006). We also review de novo whether an offense constitutes a "crime of violence" for sentencing purposes. *Id.*

## A.

Mr. Corner maintains that the district court erred in classifying him as a career offender because criminal trespass to a dwelling is not a "crime of violence" under the residual clause of U.S.S.G. § 4B1.2(a)(2). The Wisconsin "criminal trespass to a dwelling" statute provides: "Whoever intentionally enters the dwelling of another without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class A misdemeanor." Wis. Stat. § 943.14.[4] Mr. Corner

---

[4] Mr. Corner conceded before the district court that the conviction qualified as a felony for purposes of § 4B1.1(a). The conviction triggered a repeat offender enhancement under Wis. Stat. § 939.62(1)(a), producing a sentence of three years' imprisonment. In *United States v. Bissonette*, we held that a prior conviction that triggered the Wis. Stat. § 939.62(1)(a) recidivist

(continued...)

maintains that, although a breach of the peace can occur from conduct that puts the victim "in fear of bodily harm," it also can result from any conduct that merely disturbs or disrupts "the peace and sanctity of the home." Reply Br. 6-7; *see also State v. Sykes*, 695 N.W.2d 277, 283 (Wis. 2005). For example, Mr. Corner notes that a breach of the peace could "consist of profane and abusive language." Appellant's Br. 12 (quoting Wisconsin Jury Instructions—Criminal, Vol. II § 1437 (2002)). He contends that, because criminal trespass encompasses such a broad range of conduct, it cannot present generally a serious potential risk of physical injury to another. Mr. Corner contrasts criminal trespass with burglary and emphasizes that the motive for entering a dwelling when trespassing is not to steal or to commit a felony. *Compare* Wis. Stat. § 943.14 (criminal trespass to dwellings), *with* Wis. Stat. § 943.10 (burglary). Finally, Mr. Corner notes that two other courts of appeals have determined, in unpublished dispositions, that criminal trespass is not a crime of violence.[5]

---

[4] (...continued)

enhancement and produced a sentence of imprisonment greater than one year qualified as "a felony" under § 4B1.1(a). 281 F.3d 645, 647 (7th Cir. 2002); *see also United States v. Clanton*, 538 F.3d 652, 657-58 (7th Cir. 2008) (citing *Bissonette*). Accordingly, because Mr. Corner's criminal trespass to a dwelling conviction carried a three years' imprisonment sentence under Wis. Stat. § 939.62(1)(a), we shall treat the conviction as a felony.

[5] Mr. Corner relies upon *United States v. Ortuno-Caballero,* 187

(continued...)

We take a categorical approach to determining whether an offense is a crime of violence and therefore may not inquire into the conduct of a particular offender. *Chambers v. United States*, 129 S. Ct. 687, 690 (2009). The relevant portion of the Sentencing Guidelines states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> . . .
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[5] (...continued)
F. App'x 814 (10th Cir. 2006), and *United States v. Calloway*, 189 F. App'x 486 (6th Cir. 2006). Both of these cases are different from the one before us. In *Ortuno-Caballero,* the court interpreted U.S.S.G. § 2L1.2(b)(1)(A); the residual clause in that provision defines "crime of violence" more narrowly than a mere potential risk of physical injury. *See Ortuno-Caballero*, 187 F. App'x at 817 (quoting U.S.S.G. § 2L1.2, cmt. n.1(B)(iii)). In *Calloway*, the court took issue with the fact that the Ohio trespass statute at issue was not limited to dwellings, as is U.S.S.G. § 4B1.2(a)(2), but also included trespass to commercial buildings. *Calloway*, 189 F. App'x at 489. *Calloway* is inapposite because the statute at issue in this case is limited to trespass to dwellings. More recently, in *United States v. Skipper*, 552 F.3d 489 (6th Cir. 2009), the Sixth Circuit, addressing a more recent version of the statute that applies to the "permanent or temporary habitation of any person," *id.* at 492, determined that the requirements of U.S.S.G. § 4B1.2(a)(2) were met.

U.S.S.G. § 4B1.2(a). Because criminal trespass to a dwelling is not one of the offenses listed in the provision, we must determine whether commission of the crime "presents a serious potential risk of physical injury to another*." Id.* In determining whether such a risk exists, we shall give significant weight to reliable empirical data. *See United States v. Templeton*, 543 F.3d 378, 381 (7th Cir. 2008) ("But when a statute inquires into risk, data trump judicial guesses."). Although the record does not contain data regarding the likelihood of violence accompanying the commission of criminal trespass to a dwelling, we previously have held that the similar crime of residential entry, under Indiana state law, "is a crime of violence because of the serious risk that an occupant could be injured." *United States v. Gardner*, 397 F.3d 1021, 1024 (7th Cir. 2005). Recently, in light of the Supreme Court's holding in *Begay v. United States*, 128 S. Ct. 1581, 1586 (2008), we reaffirmed *Gardner*'s holding. *See United States v. Hampton*, 585 F.3d 1033, 1042-44 (7th Cir. 2009).[6] We observed in *Gardner* that entering a residence without permission, as in the case of burglary, could lead to an encounter with an occupant, and thereby

---

[6] *See also United States v. Venegas-Ornelas*, 348 F.3d 1273, 1278 (10th Cir. 2003) (holding that the defendant's prior residential trespass conviction was a "crime of violence" under 18 U.S.C. § 16(b) because, although residential trespass does not require specific intent, "there is still a substantial risk that a defendant will need to use force against people or property to either gain entry or remain in a dwelling unlawfully"); *United States v. Delgado-Enriquez*, 188 F.3d 592, 595 (5th Cir. 1999) (same).

could create a serious potential risk of injury. *Gardner*, 397 F.3d at 1024. The same is true for an offender engaging in criminal trespass to a dwelling.

The fact that a crime creates a serious potential risk of injury, however, is not enough to make it a crime of violence. In *Begay*, 128 S. Ct. at 1586, the Supreme Court considered whether drunk driving is a violent felony under section 924(e)(2)(B)(ii) of the Armed Career Criminal Act ("ACCA").[7] Although the Court acknowledged that drunk driving presents a serious potential risk of physical injury, the Court nevertheless concluded that the offense does not fall under that provision. *Id.* at 1588. The Court held that the residual clause applies only if a crime is similar to the listed offenses. *Id.* at 1584-85. Burglary, arson, extortion and the use of explosives, said the Court, are all "purposeful, 'violent,' and 'aggressive' conduct," whereas drunk driving is not. *Id.* at 1586. It observed that, unlike the crimes listed in the statute, driving under the influence "need not be purposeful or deliberate." *Id.* at 1587.

Unlike drunk driving, which is significantly different from the crimes listed in the provision, criminal trespass to a dwelling is similar to burglary. Both are purposeful property offenses that involve the deliberate entry into

---

[7] Because section 924(e) of the ACCA contains language identical to that found in U.S.S.G. § 4B1.2, we interpret the two provisions to have the same meaning. *See United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008). Thus, Supreme Court precedent that interprets section 924(e) of the ACCA is relevant to our analysis.

a dwelling without the permission of the owner.[8] Both offenses are also violent and aggressive in nature because the perpetrator could encounter the occupants of the dwelling and provoke a confrontation. *See Chambers,* 129 S. Ct. at 691-92. The fact that the latter offense does not include an intent to steal or to commit a felony does not lessen the risk of such an encounter. Consequently, we hold that criminal trespass to a dwelling is a crime of violence and conclude that Mr. Corner was sentenced properly as a career offender.

**B.**

We now turn to whether this case should be remanded for resentencing. In *Kimbrough*, the Supreme Court acknowledged that section 2D1.1 of the Sentencing Guidelines contained a disparity between the sentences of persons charged with trafficking powder cocaine and of those charged with trafficking crack cocaine, creating a 100:1 crack/powder ratio in sentencing. The Court observed that this disparity can produce disproportionately harsh sanctions for crack cocaine offenders and held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sen-

---

[8] Under Wisconsin Statute Section 943.10, a person who intentionally enters any building or dwelling "without the consent of the person in lawful possession and with intent to steal or commit a felony" is guilty of Class F felony burglary. Thus, the distinguishing factor between burglary and criminal trespass is intent to steal or commit a felony.

tence 'greater than necessary' to achieve [18 U.S.C.] § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 110. Consequently, we remand for resentencing those cases in which the defendant was sentenced under section 2D1.1 and in which the issue of the crack/powder disparity has been preserved. *United States v. Bruce*, 550 F.3d 668, 675 (7th Cir. 2008) (citing *United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008)).

Mr. Corner and the Government both submit that, although the district court had the discretion under *Kimbrough* to impose a below-guidelines sentence based upon a policy disagreement with the career offender Sentencing Guidelines, it may not have realized that it had such discretion. Both parties observe that the statutory maximum for possession with intent to distribute five to fifty grams of crack cocaine is forty years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(B)(iii), resulting in a career offender offense level of 34, *see* U.S.S.G. § 4B1.1(b)(B).[9] In contrast, had Mr. Corner possessed an equivalent amount of powder cocaine, the statutory maximum would have been twenty years' imprisonment, *see* 21 U.S.C. § 841(b)(1)(C), resulting in a career offender offense level of only 32, *see* U.S.S.G. § 4B1.1(b)(C). Consequently, given that Mr. Corner has been assigned a criminal history category of VI and received a three-level decrease for acceptance of responsibility, his guidelines range would have been 151-

---

[9] The Government withdrew the contention by a letter submitted under Rule 28(j) after our decision in *United States v. Welton,* 583 F.3d 494, 497 (7th Cir. 2009).

188 months' imprisonment for powder cocaine, as opposed to 188-235 months' imprisonment for crack cocaine.

The Supreme Court has not addressed whether *Kimbrough* applies to crack offenders sentenced as career offenders under U.S.S.G. § 4B1.1(b). Although the Government makes a powerful argument to the contrary, we are constrained by the decision of this court in *United States v. Welton,* 583 F.3d 494, 497 (7th Cir. 2009). In that case, this court held that defendants who are sentenced as career offenders are not entitled to a sentencing remand. Rather, career offenders' base offense levels track the statutory maximums of their convictions. While we cannot give relief to Mr. Corner under these circumstances, the Government is, of course, free to seek further redress from what it believes to be an injustice by recommending an appropriate commutation of the sentence by the Executive Branch.

## Conclusion

For the foregoing reasons, we must affirm the judgment of the district court.

AFFIRMED