AMBRO, Circuit Judge,
concurring.
I fully join my colleagues in concluding that the District Court erred proeedurally by failing to explain its apparent policy disagreement with the career offender provision, U.S.S.G. § 4B1.1, and by failing to consider the need to avoid unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(6). I write separately to explain why I do not doubt that district courts are free to vary from the career offender Guideline range based on a categorical policy disagreement with § 4B1.1.[1] Because of the importance of this question, I believe we should resolve it in this case, despite the fact that the parties do not dispute it. Cf. Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 290, 37 S.Ct. 287, 61 L.Ed. 722 (1917) (noting that a “court cannot be controlled by agreement of counsel on a subsidiary question of law”). Indeed, I find it odd that we vacate the District Court’s sentence with instructions to explain its policy disagreement without first concluding that it was authorized to vary on that ground in the first place.
I.
It is, of course, not always the case that, when a district court varies from the career offender Guideline range, it has done so based on a “policy disagreement” with § 4B1.1. Rather, a variance from that range often may reflect a sentencing court’s determination that, “despite meeting the formal criteria for career offenders,” the defendant’s individual circumstances “fall outside the guideline’s heartland or intended scope.” United States v. Pruitt, 502 F.3d 1154, 1170 (10th Cir.2007) (McConnell, J., concur *227 ring), vacated on other grounds, 552 U.S. 1306, 128 S.Ct. 1869, 170 L.Ed.2d 741 (2008); see also United States v. Martin, 520 F.3d 87, 95-96 (1st Cir.2008) (district court’s variance from career offender Guideline range was not a “repudiation of the policies embodied in the [Sentencing [Guidelines,” as the court had “grounded the defendant’s sentence in case-specific considerations,” including the court’s conclusion that the defendant was a “changed man” who would “not re-offend”).[2]
Turning to our case, this is how Merced seeks to characterize the District Court’s variance: he argues that, rather than basing its sentencing decision “on a categorical policy about the career offender provision in general!,] ... the District Court grounded its sentence firmly in the individual circumstances of Mr. Merced’s case, as filtered through the § 3553(a) factors.” (Appellee’s Br. at 28.) The Court similarly characterized its sentence as solely based on its evaluation of “the nature and circumstances of the offense and the history and characteristics of’ Merced, 18 U.S.C. § 3553(a)(1), rather than a criticism of the career offender provision itself.
Yet the Court’s stated policy of reserving a sentence within the career offender Guideline range for “significant, violent drug deals” is essentially a rejection of § 4Bl.l’s policy of treating repeat drug offenders — regardless of the quantity of drugs involved or whether the defendant’s offense or prior offenses involved violence — as offenders whose Guideline ranges should be at or near the statutory maximum sentence. Stated another way, the Court imposed new, categorical factors (the quantity of drugs involved and whether the offense or predicate offenses involved violence) in determining the appropriateness of a sentence within the career offender Guideline range. Cf. United States v. Moreland, 437 F.3d 424, 436 (4th Cir.2006) (noting that the career offender provision is “fraught with potential imprecision,” and “covers a broad range of offenders, encompassing the street-level dealer who handles only small quantities of drugs and the drug kingpin or the recidivist with a history of violence”) (internal quotation marks omitted); see also Pruitt, 502 F.3d at 1167 (McConnell, J., concurring) (noting that, under § 4B1.1, “it does not matter, for sentencing purposes, whether [the defendant’s] prior drug felonies were large-scale or petty, violent or nonviolent”). In that light, I believe the Court’s variance is best understood as motivated by a policy that “applies to a wide class of offenders or offenses,” United States v. Cavera, 550 F.3d 180, 191 (2d Cir.2008) (en banc) — and one that disagrees with the policy underlying § 4B1.1 — rather than a straightforward application of the § 3553(a) factors to reach a reasonable sentence for a defendant whose circumstances fall outside the intended scope of the career offender provision.
Though the line between a variance based on a “policy disagreement” with § 4B1.1 and one based on an “individualized determination” of a particular career offender’s circumstances is less than precise, it is vital that we give district courts *228 explicit guidance regarding their authority to vary from the career offender Guideline range on policy grounds. First, doing so will discourage courts from “masking” their policy disagreements as “individualized determinations,” an “[un]aceeptable sentencing practice” that the Supreme Court has described as “institutionalized subterfuge.” Spears v. United States, — U.S. -, -, 129 S.Ct. 840, 844, 172 L.Ed.2d 596 (2009). Second, the distinction between these types of variances may have important implications for the scope of our appellate review. When a district court finds that a defendant’s circumstances place him outside the “heartland” of defendants to whom § 4B1.1 was intended to apply, its decision to vary from the career offender Guideline range presumably will be entitled to the “greatest respect.” Kimbrough v. United States, 552 U.S. 85, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) (a district court’s decision to vary from the Guidelines “may attract greatest respect when the sentencing judge finds a particular case outside the ‘heartland’ to which the Commission intends individual Guidelines to apply”) (internal quotation marks omitted). By contrast, a variance for a career offender whose circumstances place him within the “heartland” of defendants to whom § 4B1.1 was intended to apply — and thus “is necessarily based on a policy disagreement with the Guidelines,” Spears, 129 S.Ct. at 843 — may be subject to “closer review” and entitled to less deference. Kimbrough, 552 U.S. at 109, 128 S.Ct. 558; Spears, 129 S.Ct. at 843 (the “implication” of Kimbrough is that “an ‘inside the heartland’ departure ... may be entitled to less respect”).
Though we are not required in this case to determine whether the District Court’s seeming policy disagreement survives such “closer review” (as the Court did not explain its policy in light of the § 3553(a) factors), I nonetheless believe that we should determine (before remanding for resentencing) whether a sufficiently explained policy disagreement with § 4B1.1 is a permissible ground on which to vary from the Guidelines. I address this second question below.
II.
Until recently, the Government had taken the position that district courts were not free to vary from the career offender Guideline range on policy grounds. The Circuit Courts for the Seventh and Eleventh Circuits previously agreed, and concluded that district courts are not authorized under Kimbrough to vary based on policy disagreements with the career offender provision because § 4B1.1 was promulgated by the Sentencing Commission in direct response to a statutory directive in 28 U.S.C. § 994(h). See United States v. Welton, 583 F.3d 494 (7th Cir.2009), overruled by United States v. Corner, 598 F.3d 411 (7th Cir.2010) (en banc)-, United States v. Vazquez, 558 F.3d 1224 (11th Cir.2009), vacated, — U.S.-, 130 S.Ct. 1135,-L.Ed.2d-(2010).
As the majority notes, this position is “falling out of favor.” Maj. Op. at 218. The Government has now abandoned it, see Appellant’s Br. at 24 (conceding that policy disagreements “may be the basis for varying from the career offender [Guideline”), Welton was overruled by the en banc Seventh Circuit Court, and Vazquez was vacated by the Supreme Court. Moreover, each of the First, Sixth, and Eighth Circuit Courts have concluded that, after Kimbrough, district courts may vary from the career offender Guideline range based on a policy disagreement (just as they may for any provision of the Guidelines). See United States v. Gray, 577 F.3d 947, 950 (8th Cir.2009); United States *229 v. Michael, 576 F.3d 323, 327-28 (6th Cir.2009); United States v. Boardman, 528 F.3d 86, 87 (1st Cir.2008) (“[W]e do not see why disagreement with the Commission’s policy judgment (as expressed in [§ 4B1.1]) would be any less permissible a reason to deviate than disagreement with the guideline policy judgment at issue in Kimbrough.”).[3]
I have no hesitancy reaching the same conclusion. Section 994(h) is directed to the Sentencing Commission, not sentencing courts, and does not purport to limit their sentencing discretion.[4] See Michael, 576 F.3d at 328 (“By its terms, [§ 994(h)] tells the Sentencing Commission, not the courts, what to do.”); Sanchez, 517 F.3d at 663 (same). And though Kimbrough cited § 994(h) as an example of “Congress ... direct[ing] sentencing practices in express terms,” 552 U.S. at 103, 128 S.Ct. 558, it did not thereby suggest that the policies reflected in § 994(h) are binding on sentencing courts. Rather, Kimbrough cited § 994(h) in the context of explaining why a different statutory provision, 21 U.S.C. § 841(b), was not binding on the Sentencing Commission. Kimbrough, 552 U.S. at 102-03, 128 S.Ct. 558 (rejecting the Government’s argument that § 841(b) required the Sentencing Commission to establish offense levels for crack cocaine offenses reflecting the erack/powder cocaine sentencing disparity imbedded in that statute). See Corner, 598 F.3d at 415-16 (Kimbrough referred to § 994(h) solely in the context of explaining why “the crack/powder ratio in the Guidelines was the choice of the Commission rather than [mandated by] Congress [in 21 U.S.C. § 841(b) ]”). In sum, though Congress required the Commission to follow certain policies in crafting the career offender provision, neither Kimbrough nor § 994(h) supports the conclusion that a district court is prohibited from considering a policy disagreement with § 4B1.1 in sentencing a career offender.
Moreover, our Court recently rejected the basic premise underlying Welton and Vazquez in the context of sentencing disparities resulting from “fast-track” programs, which apply in certain judicial districts and authorize a downward departure if a qualifying illegal immigrant defendant pleads guilty and waives his or her appellate rights. See United States v. Arrelucea-Zamudio, 581 F.3d 142, 145-46 (3d Cir.2009) (citing U.S.S.G. § 5K3.1); see also Vazquez, 558 F.Sd at 1229 (concluding that district courts may not vary based on a policy disagreement with the career offender provision because the enhanced sentencing ranges provided for in § 4B1.1, like the disparities resulting from fast-track programs, are “the result of ‘direct congressional expression’ ”). There we rejected the Fifth, Ninth, and Eleventh Circuit Courts’ conclusion that district courts may not consider disparities resulting from the limited availability of the “fast-track” *230 program because the Guideline provision authorizing the downward departure was the result of a congressional directive in the 2003 PROTECT Act.[5] See id. at 149-53. We criticized these Courts’ “attempt to distinguish fast-track programs from the sentencing guidance provided in Kimbrough [] and [to] constrain a district court’s sentencing discretion solely on the basis of a congressional policy argument,” which we characterized as “an attempt to manipulate the advisory character of the Guidelines.” Id. at 151. That observation applies equally here; though both § 994(h) and the PROTECT Act direct the Sentencing Commission to promulgate Guideline provisions reflecting certain policies, neither restrains a district court’s sentencing discretion under Booker.
* *****
In sum, I believe, and would hold, that the Supreme Court’s reasoning in Kimbrough extends to § 4B1.1 and that district courts are authorized to vary from the career offender Guideline range on policy grounds. Save these statements and my supplemental comment in the first note of this concurrence, I join Judge Smith’s excellent opinion in full.

. In addition, though I agree with my colleagues that the District Court did not “ignoren” the Guideline range, Maj. Op. at 216, I am unsure that it gave the Sentencing Guidelines "the consideration they are due” in reaching its sentence. United States v. Goff, 501 F.3d 250, 256 (3d Cir.2007).
At sentencing, the Court quickly rejected the propriety of a sentence within both the career offender Guideline range of 188 to 235 months and the Guideline range that applied in the absence of the career offender enhancement — 110 to 137 months, calculated under the drug quantity table in U.S.S.G. § 2D 1.1(c). Though the Court subsequently articulated a reason for rejecting the career offender Guideline range, and found that a sentence within that range was not "near a reasonable sentence,” App. at 76, it did not explain why a sentence within the 110 to 137 month-range was also inappropriate. A sentence within this range would seemingly take into account the Court’s predominant concern that the amount of crack cocaine possessed by Merced was "relatively small” when compared to the "kilograms and pounds of stuff” that it “usually sees,” id. at 77, as the offense levels provided for in § 2D 1.1(c) are tied specifically to the amount of crack cocaine involved in the offense. Compare U.S.S.G. § 2D1.1(c)(2) (providing for an offense level of 36 for an offense involving between 1.5 and 4.5 kilograms of crack cocaine), with § 2D1.1(c)(6) (providing for an offense level of 28 for an offense involving between 35 and 50 grams of crack cocaine). In that light, I cannot conclude with conviction that the Court gave the Guidelines “the consideration they are due” as a factor under § 3553(a). Goff, 501 F.3d at 256; 18 U.S.C. § 3553(a)(4)(A).

. These types of justifications were also typical of pre-Booker downward departures in calculating the sentencing range under the Guidelines for defendants qualifying as career offenders. See Michael S. Gelacak et al., Departures Under the Federal Sentencing Guidelines: An Empirical and Jurisprudential Analysis, 81 Minn. L.Rev. 299, 356-57 & n. 248 (1996) (reporting that a frequent justification for a sentence below the career offender Guideline range was that the defendant’s predicate offenses were "minor or too remote in time to warrant consideration”).

. Though the Second Circuit Court has not precisely held that Kimbrough authorizes district courts to vary from the career offender Guideline range on policy grounds, it similarly has rejected the argument that § 994(h) restricts district courts' sentencing authority. See United States v. Sanchez, 517 F.3d 651, 663-65 (2d Cir.2008).

. Section 994(h) provides that
[t]he Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and — (1) has been convicted of a felony that is ... (B) an offense described in ... 21 U.S.C. § 841 ... and (2) has previously been convicted of two or more prior felonies, each of which is ... (B) an offense described in ... 21 U.S.C. § 841 [.]
28 U.S.C. § 994(h) (emphasis added).

. We did so even though the Government had declined to argue that “congressional policy concerning fast-track programs prohibited the exercise of a district court’s discretion.” Id. at 150 n. 8.